221 P.3d 1027

**STATE of Arizona, Plaintiff/Appellee,**

v.

**Sama YEGAN, Defendant/Appellant.**

**No. 1 CA–CR 08–0455.**

Court of Appeals of Arizona, Division 1, Department B.

Dec. 8, 2009.

Terry Goddard, Arizona Attorney General By Kent E. Cattani, Chief Counsel, and Sherri Tollar Rollison, Assistant Attorney General, Criminal Appeals/Capital Litigation Section, Phoenix, Attorneys for Plaintiff/Appellee.

Phil Noland, Attorney at Law By Phil Noland, Phoenix, Attorney for Defendant/Appellant.

## OPINION

BROWN, Judge.

¶ 1 Sama Yegan appeals from his convictions and sentences on four counts of luring a minor for sexual exploitation. He asserts that the trial court lacked subject matter jurisdiction because the conduct for which he was charged occurred in California. He also contends that the court erred in denying his motion for judgment of acquittal. For the following reasons, we affirm.

## BACKGROUND

¶ 2 Yegan met "Erica" during an online chat session on April 27, 2005. He initiated contact with her from his home in California. The chat room was in the "Arizona" section of the web site and was designated "Romance." His screen name was "Sammythe-BullofLasVegas" and hers was "az_erica_az." During the first few minutes of their conversation, Yegan learned that Erica, allegedly age fourteen, lived in Phoenix. Yegan told Erica he was thirty years old and that she could see a picture of him by viewing his "profile." Erica, in turn, sent Yegan her picture, a photo of a girl holding a teddy bear. Even though Yegan knew Erica was allegedly only fourteen years old, he continued to engage in instant messenger chat sessions with her over the next several weeks. Some chats included talk of sexual activities and innuendo. Yegan eventually arranged to travel to Phoenix to meet Erica in person so they could "hang out." When Yegan arrived in the parking lot of a fast-food restaurant for what he thought would be a meeting with Erica, he was confronted by police officers and placed under arrest.[1] After obtaining a warrant to search his rental car, police found a napkin with Erica's name and the restaurant's address written on it, some unused condoms, and two laptop computers.

---

1. Yegan was not yet aware that Erica was actually an undercover police detective. For ease of reference, we continue to use "Erica" in lieu of the name of the police detective who chatted online with Yegan.

¶ 3 After advising Yegan of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a detective interviewed Yegan. Still unaware that Erica was a police officer, Yegan admitted that he knew Erica was only fourteen years old. He acknowledged making inappropriate comments to her via his computer but claimed he was drunk during their first chat session. He further explained that he wanted to know why someone of Erica's age would participate in an adult chat room and that his sexual comments were just "frolicking." When the detective confronted Yegan with a transcript of the first chat session, Yegan admitted his behavior was wrong but denied any intent to solicit sex.

¶ 4 Based on the content of the chat sessions, Yegan was charged with four counts of luring a minor for sexual exploitation, having reason to know that the minor was under fifteen ("luring"), in violation of Arizona Revised Statutes ("A.R.S.") section 13–3554 (2001). After a four-day trial, a jury found Yegan guilty as charged, and the court sentenced him to lifetime probation, including a twelve-month jail term, and registration as a sex offender. Yegan timely appealed.

## DISCUSSION

### A. Subject Matter Jurisdiction

¶ 5 Yegan argues the superior court erred in exercising jurisdiction over this matter because no element of the crimes he was charged with occurred in Arizona. *See State v. Suarez*, 137 Ariz. 368, 375, 670 P.2d 1192, 1199 (App.1983) (focusing analysis on whether any element of criminal fraud occurred in Arizona). He asserts that luring is a substantive offense under A.R.S. § 13–3554 and is therefore completed when a person solicits sexual conduct with a minor having reason to know the person solicited was under fifteen.[2]

*See Mejak v. Granville*, 212 Ariz. 555, 558, ¶ 18, 136 P.3d 874, 877 (2006) (finding luring is not a preparatory offense, but rather, a completed offense), *superseded by statute on other grounds*, 2007 Ariz. Sess. Laws, ch. 248, § 8. Thus, Yegan contends that because he was sitting at his computer in California during each chat session for which he was criminally charged, he never engaged in conduct that violated A.R.S. § 13–3554 while in Arizona.

¶ 6 Because subject matter jurisdiction can neither be waived nor conferred by agreement, we have an independent duty to confirm jurisdiction before reaching the merits of an appeal. *See State v. Avila*, 147 Ariz. 330, 333–34, 710 P.2d 440, 443–44 (1985). This is a question of law we review de novo. *State v. Sorkhabi*, 202 Ariz. 450, 452, ¶ 5, 46 P.3d 1071, 1073 (App.2002).

¶ 7 The scope of Arizona's jurisdiction over criminal conduct is set forth in A.R.S. § 13–108 (2001).[3] Subsection (A) of the statute confers jurisdiction if:

1. Conduct constituting any element of the offense or a result of such conduct occurs within this state; or

2. The conduct outside this state constitutes an attempt or conspiracy to commit an offense within this state and an act in furtherance of the attempt or conspiracy occurs within this state[.]

(Emphasis added.)

¶ 8 Based on the plain language of subsection (A)(1), we reject Yegan's argument that asserting jurisdiction over an out-of-state crime is only appropriate if an element of the crime was committed in Arizona.[4] The legislature's adoption of A.R.S. § 13–108(A)(1) is an "expression of intent to exercise jurisdiction over a crime, wherever committed, when the 'effect' or 'result' of

---

**2.** Ariz.Rev.Stat. § 13–3554(A) provides: "A person commits luring a minor for sexual exploitation by offering or soliciting sexual conduct with another person knowing or having reason to know that the other person is a minor."

**3.** We cite the current version of the applicable statutes if no revisions material to this decision have since occurred.

**4.** The State also asserts a jurisdictional basis under subsection (A)(2), reasoning that Yegan's conduct constituted attempted sexual conduct with a minor under A.R.S. § 13–1405 (2001). Yegan could have been charged with this crime. *See Mejak*, 212 Ariz. at 556 n. 1, ¶ 2, 136 P.3d at 875 n. 1. We decline to address this argument, however, as the State did not charge Yegan with an attempted crime.

such crime occurs in Arizona."[5] *State v. Flores*, 218 Ariz. 407, 414, ¶ 17, 188 P.3d 706, 713 (App.2008). Section 13–108 has generally been given broad interpretation, granting Arizona jurisdiction over criminal offenses to the full extent permitted by federal and international law.[6] *See id.* Accordingly, the *result* of a person's conduct may still subject one to prosecution, even if the result is not an element of the offense. *Id.* (noting Arizona has jurisdiction if defendant's conduct has a direct effect in Arizona); *State v. Miller*, 157 Ariz. 129, 133, 755 P.2d 434, 438 (App.1988) ("Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of harm as if he had been present at the effect, if the state should succeed in getting him within its power.") (quoting *Strassheim v. Daily*, 221 U.S. 280, 285, 31 S.Ct. 558, 55 L.Ed. 735 (1911)). (Citations omitted).

¶ 9 The effect/result theory recognized in *Miller* and Flores is consistent with international law and the Arizona Legislature's decision to depart from the Model Penal Code ("MPC") in crafting this state's jurisdictional statute.[7] The relevant international law is expressed in the Restatement (Third) of Foreign Relations Law § 402(1)(c) (1987), which provides that a state has jurisdiction to criminalize "conduct outside its territory that has or is intended to have substantial effect within its territory." *See Flores*, 218 Ariz. at 411, 188 P.3d at 710; *see also Restatement* (Third) of Foreign Relations Law § 402(1), cmt. d ("This Restatement takes the position that a state may exercise jurisdiction based on effects in the state, when the effect or intended effect is substantial and the exercise of jurisdiction is reasonable under § 403.").

■ ¶ 10 A comparison of A.R.S. § 13–108 with MPC § 1.03, from which Arizona's criminal jurisdiction statute is derived, also supports this conclusion. *Miller*, 157 Ariz. at 133–34, 755 P.2d at 438–39. In contrast to Arizona law, § 1.03(1)(a) of the MPC confers jurisdiction only if "the conduct that is an element of the offense or *the result that is such an element* occurs within this State[.]" (Emphasis added.) In departing from the MPC's restriction that a result must also be an element of the offense, our legislature intended that Arizona's criminal jurisdiction extend beyond that established in the MPC. *Miller*, 157 Ariz. at 133–34, 755 P.2d at 438–39. Thus, Arizona has subject matter jurisdiction over crimes committed in another state if the result of such criminal activity has a substantial effect within Arizona. *Id.*

¶ 11 In *Miller*, two individuals stole diamond rings from a department store in Arizona and then travelled to Colorado where they met the defendant, Miller, for the first time. *Id.* at 130, 755 P.2d at 435. Miller agreed to help them dispose of the rings in Las Vegas, but he was subsequently arrested in Utah and extradited to Arizona for theft. *Id.* The trial court dismissed the case for lack of jurisdiction. *Id.* On appeal, this court affirmed because Miller's extra-territorial criminal conduct, fencing stolen merchandise, had an "insubstantial" and "indirect" effect on Arizona. *Id.* at 133, 755 P.2d at 438. This court reasoned that the harm to

---

5. In a subsidiary argument, Yegan asserts that Arizona does not have jurisdiction because, in criminalizing luring in A.R.S. § 13–3554, the legislature failed to include a specific provision conferring jurisdiction over out-of-state luring, unlike, for example, Florida and North Dakota. *See* FLA. STAT. § 847.0135(5); N.D. CENT. CODE § 29–03–01.1. We disagree. We presume that when the legislature adopted § 13–3554 in 2000, it was aware not only of § 13–108(A)(1), but also of our supreme court's decision in *State v. Willoughby*, 181 Ariz. 530, 892 P.2d 1319 (1995) (finding "no textual limit on the reach of [A.R.S. § 13–108] conferring extra-territorial power[.]"). *Cf. State v. Pennington*, 149 Ariz. 167, 168, 717 P.2d 471, 472 (App.1985) ("It is presumed the legislature is aware of existing case law when it passes a statute; and that it is

aware of court decisions interpreting the language of the statute[.]"). Given this prior interpretation, it was unnecessary for the legislature to include specific language in § 13–3554 regarding jurisdictional authority.

6. Yegan does not contend that Arizona's jurisdiction over his crimes is limited by federal law.

7. As this court noted in *Flores*, "[n]either the Restatements nor the Model Penal Code control the reach of specific state law. However, they indicate what authorities in the field believe as to how far a state may extend its criminal jurisdiction beyond national boundaries." 218 Ariz. at 413 n. 10, ¶ 13, 188 P.3d at 712, n. 10.

the department store occurred before Miller agreed to help dispose of the stolen rings and therefore he neither intended to cause a direct future harm in Arizona nor did so in fact. *Id.*

¶ 12 Conversely, we found that Arizona had jurisdiction over an out-of-state crime in *Flores.* 218 Ariz. at 416, ¶ 25, 188 P.3d at 715. The defendant, Flores, was a resident of Mexico. *Id.* at 409, ¶ 2, 188 P.3d at 708. While in Mexico, he contacted a person who agreed to illegally transport him into the United States. *Id.* The police arrested Flores in Arizona, and he eventually pled guilty to solicitation to commit smuggling. *Id.* On appeal, he claimed Arizona did not have jurisdiction because the crime of solicitation was committed entirely in Mexico. *Id.* at ¶ 3. We determined that while no element of the crime had been committed in Arizona, this state nonetheless had jurisdiction because the adverse effect of the crime, Flores's illegal presence here, was the intended consequence of his crime. *Id.* at 415, ¶ 21, 188 P.3d at 714. We clarified what constitutes a "substantial effect," finding that the result of a crime "does not permit a state to exercise jurisdiction whenever it suffers an adverse consequence," but rather, it "must be part of the design of the actor." *Id.* at 414, ¶ 20, 188 P.3d at 713.

■ ¶ 13 Applying these principles here, we conclude that the trial court had subject matter jurisdiction over the luring offenses charged against Yegan. His conduct demonstrated that he unlawfully solicited a minor with knowledge that his intended victim was connected to Arizona: (1) he initiated contact in an Internet chat room designated for romance in Arizona; (2) Erica went by the screen name, "az_erica_az"; and (3) Yegan learned during his first chat session with Erica that she lived in Arizona. Further, Yegan repeatedly stated his desire to visit her in Arizona and expressed his fear over the consequences of the police discovering their relationship. Even though Yegan's crimes were technically completed while he was still in California, the intended results and consequences of his Internet communications were to participate in prohibited sexual activities in Arizona with a minor. Thus,

consistent with the examples cited by this court in *Miller,* Yegan's computer transmissions resulted in a substantial effect within Arizona and the exercise of jurisdiction over his criminal activity is reasonable. *See Strassheim,* 221 U.S. at 284, 31 S.Ct. 558 (finding that defendant's unlawful scheme to sell used machinery to the State of Michigan while he was in Illinois subjected defendant to the jurisdiction of Michigan); *State v. Winckler,* 260 N.W.2d 356, 360 (S.D.1977) (finding individuals who intentionally fired gunshots from another state at persons located within the state, without hitting them, were subject to criminal jurisdiction for criminal assault in the state where the victims were located); *Hanks v. State,* 13 Tex.App. 289 (1882) (finding that forging a certificate of land transfer for land within the state is within the jurisdiction of the state even though the forger never comes within the boundaries of the state).

¶ 14 In sum, the trial court properly exercised subject matter jurisdiction over Yegan's extra-territorial conduct. To conclude otherwise would produce a result inconsistent with the substantial effects test, as well as the intent of the Arizona Legislature: sexual predators willing to travel in order to find underage victims would be given free rein to lure Arizona's minors for sexual exploitation with impunity so long as they did so from the safety of an out-of-state computer. *See* 1978 Ariz. Sess. Laws, ch. 200, § 2(B)(2) (When the legislature originally enacted the chapter on sexual exploitation of children, its purpose was "[t]o prohibit any conduct which causes or threatens psychological, emotional or physical harm to children as a result of such sexual exploitation.").

## B. Sufficiency of the Evidence

¶ 15 Before addressing Yegan's argument that the trial court erred in denying his motion for judgment of acquittal on all four counts of luring, we must turn first to an improper jury instruction.

### 1. Erroneous Jury Instruction and Invited Error

¶ 16 In reviewing the record to evaluate the sufficiency of the evidence against Yegan,

we discovered an error in the trial court's instruction on the definition of "sexual conduct." Instead of using A.R.S. § 13–3551(9) (Supp.2009),[8] which defines "sexual conduct" for offenses related to *sexual exploitation of children*, the court instructed the jury under A.R.S. § 13–3501(7) (2001), which defines "sexual conduct" for crimes related to *obscenity*. The instruction read to the jury was quoted from A.R.S. § 13–3501(7): " 'Sexual conduct' means acts of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such person is a female, breast." By contrast, as applicable here, A.R.S. § 13–3551(9) provides the correct definition for luring: " 'Sexual Conduct' means actual or simulated: (a) Sexual intercourse, including genital-genital, oral-genital, anal-genital or oral-anal, whether between persons of the same or opposite sex." Comparing the two definitions, it is clear that the court instructed the jury on a less stringent standard for sexual conduct than what is required for the crime of luring. Specifically related to the facts presented here, § 13–3551(9) does not criminalize soliciting or offering to touch genitalia or the female breast. Thus, the jury was not properly instructed.

¶ 17 The State compounded the erroneous instruction during closing arguments. *See State v. Kinkade*, 140 Ariz. 91, 94–95, 680 P.2d 801, 804–05 (1984) (counsel's statements to the jury are relevant in determining the impact of an erroneous instruction). After repeating the instruction verbatim, the prosecutor offered the following argument:

> [T]here are chats by the defendant offering sexual intercourse with this person he thought was a [fourteen]-year-old girl. There are offers to touch the breast—in this case he thought this was a female, so that would apply—and also offers to touch the genitals.
>
> So those are the sexual conduct that he offered to someone that he had reason to

know was a minor. That's right there in number one.

> So it's very clear during the course of these chats he thought he was offering sex to a minor. That's essentially what he has been charged with. That's what we've proven over the last couple of days.

The prosecutor's comment, together with the incorrect instruction, could have misled the jury into believing that it was not required to find that Yegan solicited more than touching of the genitalia or female breast, at least with respect to Counts One and Three.

¶ 18 Yegan, however, did not object to the improper instruction in the trial court nor did he object to the prosecutor's closing argument. Further, he did not raise the issue on appeal. Due to the nature of the error in question, we directed the parties to file supplemental briefing as to whether giving the jury the wrong definition constituted fundamental error.[9] We also asked the parties to address whether the doctrine of invited error should be applied in this instance.

¶ 19 As Yegan did not object to the erroneous instruction, our review is limited to fundamental error. *See Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. Fundamental error is limited to "those rare cases that involve 'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.' " *Id.* It is the defendant's burden to prove that the error was fundamental and that the error caused him prejudice. *Id.*

¶ 20 In this case, because we conclude that Yegan invited the error, we need not decide whether it was fundamental. The Arizona Supreme Court has "long held that when a party requests an erroneous instruction, any resulting error is invited and the party waives his right to challenge the instruction on appeal." *State v. Logan*, 200 Ariz. 564,

8. Section 13–3551(9) was previously numbered as § 13–3551(8), but the language of the definition did not change.

9. *See State v. Henderson*, 210 Ariz. 561, 571 n. 6, ¶ 39, 115 P.3d 601, 611 n. 6 (2005) ("In cases

where there is any doubt as to whether an error not addressed in the defendant's brief is prejudicial, an appellate court raising the issue sua sponte should ask for supplemental briefing[.]").

565, ¶ 8, 30 P.3d 631, 632 (2001). This principle, commonly known as the invited error doctrine, seeks to prevent a party from "injecting error in the record and then profiting from it on appeal." *Id.* at 566, ¶ 11, 30 P.3d at 633 (citation omitted). If we determine that an error was invited, we do not consider whether it was fundamental. *Id.* at 565, ¶ 9, 30 P.3d at 632.

¶ 21 Here, the State provided the trial court with proposed jury instructions, which included the incorrect definition of sexual conduct. Later, Yegan offered his proposed instructions. He did not repeat the text of the definition previously submitted by the State, but he listed the same statute, A.R.S. § 13–3501(7), as the source for the definition of sexual conduct.[10] Thus, notwithstanding that the State committed the same error, Yegan was still responsible for submitting an erroneous instruction.

¶ 22 Yegan contends that the invited error doctrine does not apply here because the absence of discussion in the trial court concerning the improper definition of sexual contact shows that the instruction was a simple mistake and he is not trying to profit from the improper instruction. We acknowledge that submission of the wrong definition appears to have been entirely the result of carelessness on the part of both parties. There is no dispute, however, that Yegan affirmatively requested the definition, and, although he did not initially seek to profit from the error in this appeal, he is now asking for reversal of the convictions due to the erroneous instruction. Thus, we reject Yegan's suggestion that the invited error doctrine applies only when a party raises it on appeal in the first instance. To grant Yegan a new trial based on the erroneous instruction would run counter to the purpose of the invited error doctrine. *See Logan,* 200 Ariz. at 566, ¶ 15, 30 P.3d at 633. Without

limiting the scope of the doctrine, in our view it has particular force in the context of jury instructions, because the question of whether a party has affirmatively requested a specific jury instruction should be readily apparent from the trial record.

¶ 23 Under these circumstances, we must conclude that Yegan, by requesting that the court instruct the jury based on the definition of sexual conduct found in the obscenity statutes, is now precluded from complaining of its use at trial. *See id.* at 565, ¶ 8, 30 P.3d at 633 (finding that defendant invited error by requesting the theft instruction complained of on appeal and that "equity favors the application of the usual rule of invited error rather than the exceptional rule of fundamental error") (citation omitted); *see also State v. Diaz,* 168 Ariz. 363, 365, 813 P.2d 728, 730 (1991) (holding that defendant could not "claim error for the first time on appeal by reason of an instruction given at his request"); *State v. Evans,* 88 Ariz. 364, 369, 356 P.2d 1106, 1109 (1960) (refusing to consider as grounds of error instructions requested by defendant); *Sisson v. State,* 16 Ariz. 170, 175, 141 P. 713, 714–15 (1914) (declining to reverse conviction based on erroneous jury instruction requested by defendant, and noting that the policy of reversing cases when error occurred at defendant's invitation "would, indeed, be unwise, for it must readily occur to any one [sic] that the pursuit of such a course could not be fraught otherwise than with most mischievous consequences in the administration of the law"); *State v. Tassler,* 159 Ariz. 183, 185, 765 P.2d 1007, 1009 (App.1988) (holding that issue of inadequate jury instruction was waived "[b]ecause the instruction given was the one expressly requested by defense counsel"); *State v. Islas,* 132 Ariz. 590, 592, 647 P.2d 1188, 1190 (App.1982) ("Generally, a party

---

10. In his opening statement, defense counsel briefly discussed the meaning of "sexual conduct," explaining as follows:

> Now, the judge is going to define, as I told you, what sexual conduct is. But, for example, I can tell you what it is not. Rubbing a [fourteen]-year-old girl's shoulder, while it may be inappropriate if you are [forty] years old, it isn't sexual conduct. The judge will tell you what it is.

> Clearly, if you have in mind intercourse, that's clearly covered by what the judge is going to talk to you about and *rubbing the genitals.*

(Emphasis added.). Contrary to the correct statutory definition, defense counsel suggested to the jury that "rubbing the genitals" would be sufficient to constitute sexual conduct.

who participates in or contributes to an error cannot complain of it.").[11]

¶ 24 In sum, Yegan invited the error by submitting the erroneous statutory definition to the trial court. He requested that it be given to the jury, suggested that the jury could convict based only on touching of the genitals, and failed to object to the instructions. As such, we do not consider whether the instruction constituted fundamental error.

## 2. Luring a Minor for Sexual Exploitation

¶ 25 Yegan asserts that the trial court erred in denying his motion for judgment of acquittal on all four counts because his conduct lacked sufficient specificity to constitute luring under A.R.S. § 13–3554. We disagree.

¶ 26 A trial court's denial of a motion for judgment of acquittal is reviewed for an abuse of discretion. *State v. McCurdy,* 216 Ariz. 567, 573, ¶ 14, 169 P.3d 931, 937 (App.2007). A directed verdict is appropriate only "if there is no substantial evidence to warrant a conviction." Ariz. R.Crim. P. 20(a). Substantial evidence is defined as "such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Landrigan,* 176 Ariz. 1, 4, 859 P.2d 111, 114 (1993) (citations omitted). In reviewing the evidence, we view it in the light most favorable to sustaining the verdict, resolving all inferences against the defendant. *State v. Pena,* 209 Ariz. 503, 505, ¶ 7, 104 P.3d 873, 875 (App.2005). And we look to the totality of the circumstances in determining whether the evidence is sufficient to sustain the verdict. *See State v. Hall,* 204 Ariz. 442, 454, 65 P.3d 90, 102 (2003) (citation omitted).

¶ 27 To convict Yegan of the charges against him, the State was required to estab-lish that on four different occasions Yegan "lur[ed]" a minor for sexual exploitation by offering or soliciting sexual conduct with another person knowing or having reason to know that the other person is a minor." A.R.S. § 13–3554(A). The jury was instructed that an "offer" is "a proposal to enter into certain arrangements, usually accompanied by an expected acceptance" and that "solicitation" means "to seek, to obtain by persuasion, entreaty or formal application."

¶ 28 As an initial matter, we reject Yegan's contention that the words of the offer or solicitation must have a precise degree of certainty or involve any particular sexual language. To the contrary, the proper inquiry is whether substantial evidence exists for a jury to reasonably and fairly conclude that the defendant in fact solicited or offered to engage in sexual conduct with a minor. *See Grohs v. State,* 944 So.2d 450, 457 (Fla.Dist.Ct.App.2006) (affirming conviction for luring of a minor because online communications met the plain and ordinary definitions of seduce, solicit, lure, and entice, even though defendant had avoided explicit references to sexual conduct). Jurors are well-suited, given their varied life experiences, to evaluate the conversation as a whole and decide whether particular words and phrases can reasonably be interpreted as offering or soliciting sexual conduct with a minor. *See id.* (noting that the tenor of defendant's suggestive comments such as "we can be more, and do whatever makes you happy" and "I'd be happy to do anything with and/or for you right now," considered in the context of being directed at a fifteen-year-old boy in a "Young Men" chat room, could reasonably be construed as aimed at the propositioning of sexual conduct).

¶ 29 We also reject Yegan's argument that because his comments were based on "fantasy," they could not be construed as a true offer of solicitation. Fantasy or not, as discussed below, the words he communicated

---

11. Other jurisdictions have held similarly. *See, e.g., State v. Chang Yang,* 174 N.C.App. 755, 622 S.E.2d 632, 635 (2005) (finding invited error because defendant helped draft the instruction and communicated to the trial court that he was satisfied with it); *State v. Geukgeuzian,* 86 P.3d 742, 745 (Utah 2004) (finding the error was invited when, although counsel's "failure to include a separate mens rea element in his proposed instruction was most likely inadvertent and not a conscious attempt to mislead the trial court[,]" the instruction "effectively led the trial court into adopting the erroneous jury instruction that [counsel] now challenges on appeal").

via his computer were sufficiently explicit to allow reasonable persons to find that Yegan violated § 13–3554(A) beyond a reasonable doubt.

### Count One—April 27, 2005

¶ 30 During their first Internet chat session, Erica informed Yegan that she was fourteen years old and lived in Arizona. Notwithstanding, the following exchange took place after discussing the appearance of Erica's small breasts:

Yegan: so u have not had sex yet?

Erica: no.

Yegan: are u going to?

Erica: yes.

Yegan: when?

Erica: lol. i dont know.

Yegan: Do it when u are ready.

Erica: k

Yegan: and do it with ME. just kidding. dont freak out.

Erica: lol

Eventually, the chat turned to the possibility of meeting in person. Yegan offered to get a hotel room and stated:

Yegan: if u like me or if u trust me.. u can do more [than kiss] ..

Erica: like what

Yegan: well what do u think?

Erica: i dont know.

Yegan: i don't know.. it is up to u. maybe u want me to play with your breasts and kiss them or kiss the back of your neck.

Erica: k

Yegan: and touch you in places no one has touched

. . .

Yegan: u are a WOMAN and I will make u feel like a woman.

. . .

Yegan: and if u want to do it and go all the way and become a REAL woman.. I can do that too

Erica: u would

Yegan: yes of course but it is up to u

This chat permitted a reasonable jury to conclude that Yegan solicited sexual inter-

course with Erica as contemplated by § 13–3551(9)(b). Yegan discussed Erica's virginity and then offered to get a hotel room and "do it and go all the way" so that she could become a "real woman."

### Count Two—April 28, 2005

¶ 31 The following morning, their online conversation continued. Yegan told Erica how much he missed her, fantasized about kissing her, and discussed the possibility of meeting in person the following week:

Yegan: i am coming [to Phoenix] ... just make sure u let me know that u are excited ... and that u want me i want u

Erica: i am

Yegan: good

Yegan: do you want to become a Woman?

Erica: what u mean

Yegan: well there is a difference between girls and women.. do u know what that is?

Erica: age

Yegan: no age wont do it someone can be an old girl or a young woman

Erica: k.

Yegan: women have lost their virginity girls dont.

Changing the subject, Yegan then offered to take Erica to a "fun and expensive" place for lunch. And he warned Erica to keep their online relationship a secret from her mother. A reasonable jury could have inferred from this chat session that Yegan was soliciting sexual intercourse with Erica. Yegan stated his intent to visit Phoenix, inquired as to whether Erica was sexually aroused by the thought of being with him, and implicitly raised the possibility of Erica losing her virginity with him.

### Count Three—May 3, 2005

¶ 32 Almost a week later, the following chat session took place:

Yegan: I fantasized about you a lot.

Erica: [really]

Yegan: yah i wanted your body next to mine

Erica: realy you do

. . .

Yegan: Your body is READY? is it? is it?

Erica: i think so

Yegan: well tell me how it feels down there?

Erica: what u mean

Yegan: do u have an urge?

Erica: an urge

Yegan: i mean do you have dreams of a man?

Erica: i think about it yea

Yegan: Do u want something to go inside it?

Yegan then continued to engage in additional conversation that day which was much more explicit than the other chat sessions, including an invitation to "just come to my hotel room." We see no reason to recount more of what he said during this "chat." The record contains ample evidence that a reasonable jury could conclude that Yegan solicited Erica for sexual conduct during the May 3 chat session.

**Count Four—May 4, 2005**

¶ 33 During another online chat the following day, Yegan discussed visiting Phoenix in less than a week. The following conversation took place:

Yegan: got any more pics?

Erica: no

Yegan: ok u are doing homework?

Erica: yea

Yegan: u should be doing it with me

Erica: u are not here

Yegan: u think we would get any homework done if I was there?

Erica: i dont know.

Yegan: i dont think so. we would be naked in bed.

Erica: lol

Yegan: you would be sitting on me. what do u think?

Erica: i dont know.

Yegan: u think u can sit on it?

Based on the inferences to be drawn from this conversation in light of prior chat sessions, which give unmistakable meaning to otherwise vague terms such as "it," we conclude that substantial evidence supports the finding that Yegan was soliciting sexual intercourse during this chat session as well.

## CONCLUSION

¶ 34 For the foregoing reasons, we hold that the trial court had jurisdiction over Yegan's out-of-state criminal conduct and that the evidence presented at trial was sufficient to support his convictions on four counts of luring. Accordingly, we affirm Yegan's convictions and sentences.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and PATRICIA K. NORRIS, Judge.