260 P.3d 1088

**STATE of Arizona, Appellee,**

v.

**Kailash P. BHATT, Appellant.**

**No. 1 CA–CR 10–0288.**

Court of Appeals of Arizona, Division 1, Department B.

July 26, 2011.

---

**524**

Thomas C. Horne, Arizona Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section And Michael T. O'Toole, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Debus, Kazan & Westerhausen, Ltd. By Tracey Westerhausen, Phoenix, Attorneys for Appellant.

## OPINION

SWANN, Judge.

¶ 1 Kailash P. Bhatt ("Defendant") appeals from his conviction and sentence for defrauding secured creditors. Because we find sufficient evidence to support the jury's verdict and disagree with Defendant's contention that relevant statutes are unconstitutionally vague, we uphold the statutes and affirm the conviction.

### FACTS AND PROCEDURAL HISTORY [1]

¶ 2 In 1999, Defendant, a licensed real estate broker and investor, began buying residential properties to use as rentals. In 2006 he purchased a property in Anthem ("the property") subject to a deed of trust that gave PHH Mortgage Corporation a security interest in the property.

---

1. We view the evidence in the light most favorable to sustaining the jury's conviction and resolve all reasonable inferences against Defendant. *State v. Manzanedo*, 210 Ariz. 292, 293, ¶ 3, 110 P.3d 1026, 1027 (App.2005).

¶3 In 2008, Defendant began missing payments. In August, he sent a "hardship letter" to PHH to propose that they "meet halfway" on the mortgage, and talked with PHH about other options, including a short sale and a lower interest rate. In December 2008, PHH filed a Notice of Trustee's Sale advising that the property would be sold at public auction March 25, 2009, but the sale was postponed and Defendant and PHH continued to negotiate.[2]

¶4 On March 30, 2009, Defendant completed a Monthly Income and Mortgage Expenses form that asked him to explain the "hardship" events that contributed to his inability to remain current on his mortgage. Defendant wrote that his income from real estate had "dropped significantly" and his "renters are not paying the rent."[3] He also explained his "intent to remodel and re-rent" the property, and requested a 40–year term with a lower interest rate.

¶5 In April 2009, Defendant decided to sell highly upgraded cabinets, counters and appliances from the property and replace them with cheaper items. He placed two online ads: the first offered "highly upgraded cabinets and granite counter top"; the second offered "GE profile black appliances—double oven, microwave, and dishwasher." The ads came to the attention of Mesa Police Detective Helen Simmonds, a member of an FBI mortgage task force investigating mortgage fraud and related crimes. As part of an undercover investigation, Simmonds called the number on the ad and spoke to Defendant. They discussed the items for sale and negotiated a price of $9,000. Defendant requested that the sale take place "by the weekend" to avoid a foreclosure sale, and Simmonds agreed. Defendant and Simmonds, along with another undercover detective introduced as her husband, met at the property.[4] The detectives paid Defendant $2,000 cash and agreed to pay the remaining $7,000 when they picked up the items that weekend. When the detectives left the house, they signaled team members outside who arrested Defendant.

¶6 Defendant was indicted for defrauding secured creditors, a class 6 felony, in violation of A.R.S. §§ 13–2201 and –2204. Before trial, Defendant moved to dismiss for legal impossibility, asserting that the charging statute was "fatally defective" because the definition of security interest "required by A.R.S. § 13–2204 as an element of the offense doesn't exist." The state filed a response and the court conducted oral argument before denying the motion.

¶7 The case was tried to a jury. At the conclusion of the state's case, Defendant moved for a judgment of acquittal pursuant to Ariz. R.Crim. P. 20 and contended that the state had presented no evidence that he had the intent to hinder or prevent the enforcement of PHH's security interest. The court denied the motion, finding the state presented substantial evidence that Defendant intentionally tried to reduce the value of the property by selling expensive cabinets, countertops, and appliances. The jury found Defendant guilty.

¶8 Defendant moved for a new trial, contending *inter alia* that he only "attempted" to defraud a creditor and urging the court to enter judgment accordingly. The state responded and the court heard oral argument before denying the motion. At sentencing, the court designated the offense as a class 1 misdemeanor and placed Defendant on 2 years' unsupervised probation.

¶9 Defendant timely appeals. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1), 13–4031, and –4033(A).

### DISCUSSION

¶10 On appeal, Defendant argues (1) the transaction was not a sale, (2) Defendant did not hinder or prevent enforcement of PHH's

---

2. The auction took place May 11, 2009, and the property was sold to the highest bidder for $325,152.30.

3. Defendant testified that the tenants stopped paying rent before he received notice of the trustee sale.

4. The conversations among the two detectives and Defendant were recorded and played for the jury.

interest, and (3) A.R.S. §§ 13–2201 and –2204 are unconstitutionally vague.

### I. SUFFICIENT EVIDENCE EXISTED THAT DEFENDANT SOLD THE COUNTERTOPS, CABINETS, AND APPLIANCES TO DETECTIVES.

¶ 11 Defendant contends that he did not "sell" the cabinets, countertops, and appliances because he only received a "down payment" and nothing was removed from the home. *See* A.R.S. § 13–2204(A) ("A person commits defrauding secured creditors if the person knowingly destroys, removes, conceals, encumbers, converts, sells, obtains, transfers, controls or otherwise deals with property subject to a security interest with the intent to hinder or prevent the enforcement of that interest.").

¶ 12 We review the denial of a Rule 20 motion for abuse of discretion. *State v. Yegan,* 223 Ariz. 213, 220, ¶ 26, 221 P.3d 1027, 1034 (App.2009). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto–Fong,* 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo,* 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987).

¶ 13 Here, Defendant placed an advertisement to sell cabinets, granite countertops and appliances, and included his telephone number in the ad. Simmonds called the number in the ad and told Defendant she "want[ed] ... the appliances and the cabinets" and would pay "7000 or 8000 for everything." Defendant told Simmonds he had another offer for "around eight seventy-five," she offered "9000 for all of it," and he accepted. They later met at the house to inspect the items. The detectives explained they had to rent a truck, so they arranged to meet Saturday at 12 p.m. to pick up the items. Defendant told the detectives they could also take the "matching cabinet" in the laundry room, but not the cabinet from the kitchen island because then the house would "look completely ripped." The detectives told De-

fendant it would take them about an hour to get the cabinets down on Saturday. Defendant advised them to pull the truck into the garage on Saturday and remove the items "discreetly" so the "neighbors don't get concerned." Defendant accepted $2,000 that day and agreed that the detectives could "give [him] $7000 in cash on Saturday." When the detectives asked Defendant if he had other cabinets, Defendant told them he had three other houses with similar upgrades that would soon be foreclosed upon.

¶ 14 The jury was instructed that the crime charged required proof that Defendant "[k]nowingly destroyed, removed, concealed, encumbered, converted, sold, obtained, transferred, controlled or otherwise dealt with property subject to a security interest." Defendant did not request a jury instruction to define "sold," but jurors were instructed to consider "all of the evidence in the light of reason, common sense, and experience."

¶ 15 The evidence presented was sufficient for a reasonable jury to determine that Defendant sold the items to the detectives regardless of whether they actually removed them from the home.

### II. THE SALE OF THE COUNTERTOPS, CABINETS AND APPLIANCES HINDERED OR · PREVENTED PHH FROM ENFORCING ITS SECURITY INTEREST.

¶ 16 Defendant asserts that A.R.S. § 13–2204 infringes on due process because the meaning of "with the intent to hinder or prevent enforcement of [the security] interest" does not " 'convey a definite warning' of the forbidden conduct." He concludes that the " 'enforcement' aspect of the statute must be unconstitutionally vague for the jury to have reached its conclusion." We disagree with this analysis.

¶ 17 We review constitutional claims and statutory interpretation de novo. *State v. Hansen,* 215 Ariz. 287, 289, ¶ 6, 160 P.3d 166, 168 (2007). When construing statutes, "[w]e give words their usual and commonly understood meaning unless the legislature clearly intended a different meaning."

*State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990).

¶ 18 As an initial matter, we find Defendant's focus on the definition of "enforcement" to be misplaced. A.R.S. § 13–2204 does not require the state to prove *enforcement* of the security interest; rather, it requires proof that Defendant intended to "hinder or prevent" enforcement of the interest.

¶ 19 Defendant does not dispute that PHH's security interest in the property included

> all improvements now or hereafter erected on the property and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this security instrument.

Defendant told the detectives that the cabinets and countertops "came with the house," which means PHH's security interest attached to them—not their "cheaper" replacements. When Defendant sold them, he "hinder[ed] or prevent[ed]" PHH from enforcing its interest because their absence would reduce the value of the security at the time of sale.

¶ 20 As he did below, Defendant argues that "making changes to a house isn't ... criminal" and suggests that a guilty verdict in the case at bar would mean that a property owner "couldn't take out a bathroom to make a bigger bedroom because you were not replacing the sink and the toilet you took out." We agree that a homeowner does not place himself at risk of criminal liability merely by remodeling the home. But Defendant's argument ignores the intent element of the crime charged. Here, although Defendant testified that he was going to replace the sold items, the state presented significant evidence to support its theory that Defendant never intended to replace them—Defendant's request that the items be moved discreetly, and his prediction that the house

might look "ripped," serve as circumstantial evidence that he intended to strip the house of some of its value rather than remodel it. Moreover, Defendant told the detectives in their taped conversation that he was selling the items to recover some of his down payment.[5] When Simmonds explained that she wanted the items because she had purchased a house "with nothing in it," Defendant responded, "then this one is going to become like the house you're moving into."

¶ 21 In other words, the evidence was sufficient to find that Defendant intended to convert the value of certain fixtures for his own benefit and simultaneously prevent PHH from realizing their value. When asked to explain his plan for replacing the items, Defendant admitted he "didn't know how it would have been done." Such conduct could plainly reduce the property's value and therefore impede PHH's enforcement of its interest.

¶ 22 Defendant testified that he planned to use the sale proceeds to bring his mortgage current before the foreclosure sale occurred and then renegotiate the loan with PHH to keep the house. But evidence demonstrated that he told PHH on March 25 that he did not want loan modification on the property, and PHH noted in its "closing file" that "[Defendant] will contact [PHH] if he changes his mind and decides to keep [the house]." Defendant placed the advertisements a few days later.

¶ 23 "No rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury." *State v. Cox,* 217 Ariz. 353, 357, ¶ 27, 174 P.3d 265, 269 (2007). From this evidence, a reasonable jury could have found the state's case more credible than Defendant's, and found Defendant guilty.

---

5. The conversation was:
   [Defendant]: I mean, here's my, here's the issue, I paid 40 grand down on this house. Okay?
   [Detective]: Um-hm.
   [Defendant]: Bought for 475. The house is selling for 220, the bank would not help me.
   [Detective]: Oh.
   [Defendant]: What do you expect me to do? 220. I mean, the house is selling for 220.
   [Detective]: So you're just trying to recover some of your money back?
   [Defendant]: Yeah, [m]y down payment. Most of my credit is gone. So ...

*III. A.R.S. §§ 13–2201 AND –2204 ARE NOT UNCONSTITUTIONALLY VAGUE.*

■ ¶ 24 Lastly, Defendant contends that a "mish mash of applicable statutes" results in statutory vagueness because A.R.S. § 13–2204 references a "term that doesn't exist." We disagree with this assessment.

¶ 25 Because Title 47, chapter 9 does not provide a specific definition of "security interest," Defendant concludes that A.R.S. § 13–2204 is fatally defective.[6] Defendant does not, however, explain his position that the definition of the term "pursuant to Title 47, chapter 9" requires that the definition of security interest be found there. A.R.S. § 13–2201(7) clearly defines "security interest" as "an interest in personal property or fixtures." Title 47, chapter 9 provides detail about security interests, explaining, *inter alia,* how they are created, perfected, and enforced. *See, i.e.,* A.R.S. §§ 47–9102(A)(72) (defining "security agreement" as "an agreement that creates or provides for a security interest"); –9201 (defining the general effectiveness of security agreements); –9301 (detailing perfection and priority of security interests); –9601 (defining rights after default). Therefore, we find no merit in Defendant's contention that A.R.S. §§ 13–2201 and –2204 are vague because the term "security interest" is not defined in Title 47, chapter 9.

### CONCLUSION

¶ 26 For the foregoing reasons we uphold the constitutionality of A.R.S. §§ 13–2201 and –2204, and affirm Defendant's conviction and sentence.

CONCURRING: DANIEL A. BARKER, and PATRICIA K. NORRIS, JJ.

---

**6.** The definitions in Title 47 are found in chapter 2. The definition of "security interest" found there is consistent with the one provided by A.R.S. § 13–2201. *See* A.R.S. § 47–1201(B)(35) ("an interest in personal property or fixtures that secures payment or performance of an obligation"); § 13–2201 ("an interest in personal property or fixtures").