NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SAMUEL BRETT WESLEY BASSETT, *Appellant.*

No. 1 CA-CR 12-0239
FILED 03/04/2014

Appeal from the Superior Court in Yavapai County
No. V1300CR201180151
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

COUNSEL

White Law Offices, PLLC, Flagstaff
By Wendy F. White
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By W. Scott Simon
*Counsel for Appellee*

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Margaret H. Downie joined.

**B R O W N,** Judge:

¶1          Samuel Brett Wesley Bassett appeals from his convictions and sentences for multiple counts of sexual exploitation of a minor, luring of a minor for sexual exploitation, and aggravated luring of a minor for sexual exploitation.  Bassett argues that (1) the evidence was insufficient to support the convictions for luring and aggravated luring; (2) the State committed prosecutorial misconduct by misstating the law; (3) the luring and aggravated luring statutes are unconstitutionally overbroad; and (4) the trial court abused its discretion in denying his request for a *Frye*[1] hearing and allowing expert testimony.  For the reasons set forth below, we affirm.

## BACKGROUND

¶2          Detective Pamela Edgerton received information that an individual using the name "Brett Dodge" had uploaded images of child pornography to a Facebook account.  Edgerton traced the IP address of the account to an apartment complex in Prescott and determined that Bassett was Brett Dodge.

¶3          Posing as a 13-year-old girl named "Brenna," Edgerton initiated contact by "friending" Bassett on Facebook.  Bassett accepted and for the next several weeks they participated in online chats.  Despite the fact that her Facebook page indicated Brenna was 13 years old and she told Bassett that was her age in their chats, Bassett initiated and engaged in sexually explicit conversations with Brenna.  During their chats, Bassett also sent Brenna pornographic photographs and videos, some of which included children.

---

[1]          *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

¶4　　　Pursuant to a search warrant, Edgerton seized three thumb drives found in a safe, one of which contained numerous images of child pornography. Some of the images on the thumb drive matched the pornographic images that had been uploaded by Brett Dodge on Facebook. Officers also seized Bassett's computer, and a search of his internet history revealed search terms that are commonly used when searching for child pornography.

¶5　　　A jury convicted Bassett on eleven counts of sexual exploitation of a minor, two counts of luring of a minor for sexual exploitation, and twenty-seven counts of aggravated luring of a minor for sexual exploitation. The trial court sentenced Bassett to aggregate prison terms of 202 years and this timely appeal followed.

## DISCUSSION

### I.　Sufficiency of Evidence

¶6　　　Bassett argues that the State did not provide sufficient evidence to support his convictions for "luring" and "aggravated luring" of a minor for sexual exploitation. Specifically, Bassett asserts that the State did not prove that his intent was "to achieve the result of engaging in sexual conduct" with Brenna and therefore the evidence at trial was insufficient to sustain the convictions.

¶7　　　"The question of sufficiency of the evidence is one of law, subject to de novo review on appeal." *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011). We review the sufficiency of the evidence at trial only to determine whether substantial evidence supports the convictions and view the facts in the light most favorable to sustaining the jury's verdicts. *State v. Cox*, 217 Ariz. 353, 357, ¶ 22, 174 P.3d 265, 269 (2007) (internal quotations and citations omitted). "Substantial evidence is evidence that 'reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt.'" *Id.* (citation omitted). Substantial evidence may be direct or circumstantial, and it is well established that each has equal probative value. *State v. Pettit*, 194 Ariz. 192, 197, ¶ 23, 979 P.2d 5, 10 (App. 1998).

¶8　　　To convict Bassett of luring, the State was required to prove he lured "a minor for sexual exploitation by offering or soliciting sexual conduct with another person knowing or having reason to know that the

other person is a minor or a person posing as a minor."[2] Ariz. Rev. Stat. ("A.R.S.") § 13-3554. To convict Bassett of aggravated luring, the State was required to prove, in addition to the elements of luring, that with knowledge of the "character and content of the depiction," he used an electronic device to transmit material that is harmful to minors. A.R.S. § 13-3560(A)(1).

¶9    Bassett's argument appears to turn on the fact that, unlike other cases in which an undercover officer stages a meeting between the putative minor and the defendant, no such meeting occurred in this case. He maintains that because he "rebuffed" Edgerton and Edgerton "was never able to get him to meet her," the State failed to present any evidence that his "intent was to achieve the result of engaging in sexual conduct with Brenna." But the plain language of A.R.S. § 13-3554 does not require proof that a defendant has the intention to "follow through with" or "consummate" an offer or solicitation of sexual conduct with a minor. Rather, 13-3554 "expressly prohibits requesting sexual conduct with a minor." *State v. Hollenback*, 212 Ariz. 12, 14, ¶ 5, 126 P.3d. 159, 161 (App. 2005). As such, "[t]he criminal act occurs whether or not it leads to sexual exploitation." *Id.* at 14, ¶ 5, 126 P.3d. at 161. Stated differently, the criminal act is completed when a defendant "offers" or "solicits" sexual conduct with someone he knows or should have known is a minor. *See id.* (noting that "[h]ad the legislature intended to restrict the offense to conduct violating § 13-3553, it could easily have included language to that effect"); *see also State v. Yegan*, 223 Ariz. 213, 217, ¶ 13, 221 P.3d 1027, 1031 (App. 2009) (recognizing, for jurisdictional purposes, that the crime of luring of a minor was completed when the defendant solicited the minor from his computer in California, prior to any meeting between the defendant and the minor).

¶10    Additionally, the mere fact that Bassett here did not actually meet with Brenna prior to his arrest does not indicate, as Bassett maintains, that there was no evidence of a "real" offer or solicitation and that the State secured his convictions without having to demonstrate some degree of wrongful intent on his part. As we explained in *Yegan*, "the proper inquiry is whether substantial evidence exists for a jury to reasonably and fairly conclude that the defendant in fact solicited or offered to engage in sexual conduct with a minor." 223 Ariz. at 220, ¶ 28,

---

[2]    Bassett does not challenge the sufficiency of the evidence showing that he knew or should have known Brenna was a minor within the meaning of A.R.S. §§ 13–3554 and -3560.

221 P.3d at 1034. "Jurors are well-suited, given their varied life experiences, to evaluate a conversation as a whole and decide whether the particular words and phrases spoken can reasonably be interpreted as [] offering or soliciting sexual conduct with a minor." *See id.*

¶11 In this case, the jury was presented with Bassett's conversations between him and Brenna, in which Bassett made explicit comments about engaging in sexual conduct. Bassett's communication of these words to Brenna via his computer, coupled with the images and videos he transmitted to her, was sufficient to allow a reasonable person to find beyond a reasonable doubt that Bassett offered or solicited sexual conduct with Brenna and therefore committed the crimes of luring and aggravated luring. *See id.* at 220-21, ¶¶ 28-29, 221 P.3d at 1034-35 (finding that the words the defendant communicated by computer to an undercover officer were sufficiently explicit to support convictions for luring a minor).

II.  **Prosecutorial Misconduct**

¶12 During his closing argument, the prosecutor stated:

> Again, he is offering or soliciting through these comments, things that no 35-year-old man should be saying to a 13 year old, that he is available and he wants to perform this conduct with her. Whether or not – again, the elements don't require that [the defendant] has an intention to actually follow through on this. The law criminalizes just offering it or soliciting it from a young person.

Bassett argues that this argument constituted misconduct because the prosecutor misstated the law. Bassett concedes, however, that he did not raise this objection before the trial court and that we need only review for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005). It therefore rests with defendant to prove both that fundamental error exists and that the error caused him prejudice. *Id.* at 567, ¶ 20, 115 P.3d at 607. As noted above, the plain language of A.R.S. §§ 13-3554 and -3560 does not require the State to prove that a defendant also intended to actually engage in sexual activity with the targeted minor. Thus, the prosecutor did not misstate the law.

III.  **Constitutionality of A.R.S. §§ 13-3554 and 13-3560**

¶13 Bassett argues that if the State is not required to prove that he intended to "follow through" with actual sexual conduct, then the

statutes are overbroad because they criminalize free speech in violation of the First Amendment of the United States Constitution. He acknowledges he did not raise this issue before the trial court and therefore we are limited to a fundamental error review. *Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607.

**¶14**        Regardless whether §§ 13-3554 and -3560 implicate speech, they do not regulate or criminalize any level of "protected" speech because there is no First Amendment right to speech that encourages or solicits a minor child to engage in sexual conduct with an adult. *See, e.g., United States v. Tykarsky*, 446 F.3d 458, 473 (3rd Cir. 2006) ("There is no First Amendment right to persuade minors to engage in illegal sex acts."); *United States v. Rowley*, 899 F.2d 1275, 1278 (2d Cir. 1990) ("Speech is not protected by the First Amendment when it is the very vehicle of the crime itself."); *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime."). Furthermore, the statutes do not criminalize hypothetically protected speech because they specifically limit criminal liability to those instances in which an adult engages in communication with someone he knows or has reason to know is a minor. Accordingly, the statutes at issue are not unconstitutionally overbroad.

## IV.    **Admission of Expert Testimony**

**¶15**        Prior to trial, the prosecutor gave notice of the State's intention to call Kathryn Coffman, M.D., and Leslie Quinn, M.D., both experts in pediatrics and child development, to testify at trial concerning the ages of the children depicted in the pornographic images and videos Bassett downloaded and/or sent to Brenna. Bassett filed a motion for a *Frye* hearing to determine the admissibility of the witnesses' expert testimony. In opposition, the State argued that because the expert testimony was based on the doctors' individual training and experience as "medical doctors, pediatricians who specialize in children who have been abused," their testimony was admissible pursuant to *Logerquist v. McVey*, 196 Ariz. 470, 1 P.3d 113 (2000), without the need for a *Frye* hearing.

**¶16**        At the time of the *Frye* motion, defense counsel had received copies of the doctors' reports but had not requested copies of their curricula vitae ("CV") and had not yet interviewed them. The trial court denied Bassett's motion for the *Frye* hearing, but ordered the prosecutor to provide defense counsel with copies of the doctors' CV's.

**¶17**        Bassett concedes that Coffman and Quinn were qualified to testify as experts in the field of pediatrics, but maintains that the trial court nonetheless abused its discretion in admitting their testimony without holding a hearing because:  (1) their testimony was not helpful to the jury; (2) their opinions were based on faulty scientific methods or principles; and (3) they did not properly apply accepted principles and methods.  In particular, Bassett takes issue with the doctors' use of the "Tanner stages of maturity" ("Tanner stages")[3] in their assessment of the chronological ages of the children depicted in the photographic images and videos.   He contends that their use of the Tanner stages to arrive at their opinion of the ages "based purely on pictures without any physical examination" was insufficient to comport with Rule 702(b) of the Arizona Rules of Evidence.  We review a superior court's ruling on the admissibility of evidence for abuse of discretion.  *State v. Aguilar*, 209 Ariz. 40, 49, ¶ 29, 97 P.3d 865, 874 (2004).

**¶18**        Not all expert testimony is necessarily subject to a *Frye* analysis and a *Frye* hearing is not automatically required each time scientific evidence is offered.  *State v. Speers*, 209 Ariz. 125, 130, ¶ 18, 98 P.3d 560, 565 (App. 2004).   Our supreme court has stated that a *Frye* test applies only to opinion testimony that is based on "novel scientific principles, formulae, or procedures developed by others." *Logerquist*, 196 Ariz. at 490, ¶ 62, 1 P.3d at 133.  *Frye* is inapplicable if a witness reaches a conclusion "by inductive reasoning based on his or her own experience, observation, or research."  *Id.*  Both Coffman and Quinn testified that their assessments of the developmental age of the children pictured were based on their own personal training and research and extensive experience gathered in the course of treating thousands of children.  Thus, the trial court did not abuse its discretion in declining to conduct a hearing.[4]

---

[3]        This information derives from a statistical study published in 1965 by Professor James Tanner regarding stages of development in children.

[4]        Arizona Rule of Evidence 702 was amended on September 8, 2011 and went into effect on January 1, 2012, to incorporate the standard for admitting expert testimony announced by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals*, *Inc.*, 509 U.S. 579 (1993).  However, in this case the request for a *Frye* hearing occurred on October 15, 2011, before the amendment of Rule 702.   As such, the *Frye* standard was the correct standard for admissibility of expert testimony at this stage of the trial.  *See State v. Miller*, ___ Ariz. ___, ___, ¶ 30, 316 P.3d 1219, 1229 (2013) ("The

¶19 Under Rule 702, expert testimony is admissible if the expert's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact at issue." Ariz. R. Evid. 702(a). Bassett maintains that the doctors' testimony regarding the age of the children pictured was unnecessary in this case. He cites the fact that other courts have emphasized the importance of a case-by-case inquiry into whether that testimony is necessary or "whether the age of model in a child pornography case can be determined by a lay jury without the assistance of expert testimony." *United States v. Katz*, 178 F.3d 368, 373 (5th Cir. 1999); *see also United States v. Haymond*, 672 F.3d 948, 960 (10th Cir. 2012) (acknowledging "case-by-case" inquiry into whether expert testimony is required to aid juror in determining whether images involve minors). Although the testimony may not have been "necessary," we cannot agree that it was not "helpful" to the jurors, particularly in light of Bassett's own testimony that he did not believe that any of the children pictured were under the age of eighteen. The expert testimony was also helpful in light of Bassett's contention that the body images might have been manipulated or altered.

¶20 Bassett suggests that the expert testimony unduly influenced the jury's own assessment of the ages because of its "aura of scientific respectability." However, the trial judge instructed the jurors that they were to treat the expert testimony the same "as any other testimony" and to give it as much credibility and weight as they thought it deserved in light of "all the other evidence in the case." Jurors are presumed to follow the court's instructions. *State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996). Defense counsel effectively cross-examined the doctors concerning their inability to determine whether the images had been manipulated by computer or in some other fashion. Furthermore, the jurors here were able to view the images themselves and make their own determinations. We therefore reject Bassett's assertion of undue influence.

¶21 Bassett also argues that the expert testimony was not based upon sufficient facts or data because the doctors did not specifically testify that they had any training in identifying the ages of children from photographic images alone. However, each doctor was able to testify that,

---

2012 amendment to Rule 702 is not a new constitutional rule, and we decline to retroactively apply it to this case."). Even under the amended rule, however, we conclude that the expert testimony at issue in this case would be admissible. *See infra* ¶¶ 21-23.

in light of her training and experience, she was able to determine that the images were of children under the age of fifteen.

¶22　　　　Bassett's final challenge to the expert testimony concerns the role the Tanner stages played in the doctors' opinions that the children depicted were minors. Bassett cites several studies that take issue with the use of Tanner's study or that report inaccuracies in determining the chronological ages of subjects through the use of photographs. Bassett argues that this shows that the scientific principles or methods the doctors relied upon were not reliable, and were not reliably applied to the facts of this case. But such arguments ultimately pertain more to the weight to be given the expert testimony rather than to its ultimate admissibility. *See State v. Lucero*, 207 Ariz. 301, 304-05, ¶ 14, 85 P.3d 1059, 1062-63 (App. 2004) (stating that an argument attacking a scientific method goes to the weight of the evidence, not its admissibility). Furthermore, these arguments fail to recognize that both Coffman and Quinn acknowledged that the Tanner stages should not be used to determine a subject's precise chronological age. Both doctors testified they had not used the study for that purpose, but that it was merely a research tool considered in forming their independent opinions, which were primarily based on years of pediatric experience.

¶23　　　　In sum, the trial court did not abuse its discretion in admitting the expert testimony relating to the ages of the children.

## CONCLUSION

¶24　　　　For the foregoing reasons, we affirm Bassett's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: gsh