188 P.3d 706

STATE of Arizona, Respondent,

v.

Andres Coz FLORES, Petitioner.

No. 1 CA–CR 07–0800 PRPC.

Court of Appeals of Arizona,
Division 1, Department D.

July 31, 2008.

Andrew Thomas, Maricopa County Attorney by David E. Wood, Deputy County Attorney, Phoenix, Attorneys for Respondent.

James J. Haas, Maricopa County Public Defender by Brent E. Graham, Deputy Public Defender, Phoenix, Attorneys for Petitioner.

## OPINION

WEISBERG, Judge.

¶ 1 Petitioner Andres Coz Flores ("Flores") seeks review of the trial court's order summarily dismissing his petition for post-conviction relief. The question of subject matter jurisdiction presented by this case is one of first impression. We must decide whether Arizona has jurisdiction over the crime of solicitation to commit human smuggling when the offense is committed by a Mexican citizen, Flores, in Mexico, but the result or effect of the crime is Flores' illegal entry into and subsequent illegal transportation within Arizona. For the reasons set forth in this opinion, we conclude that Arizona has jurisdiction to convict Flores of solicitation. Accordingly, we grant review, but deny relief.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The relevant facts are few and undisputed. Flores was arrested after he was discovered in a vehicle with other aliens located in Maricopa County. At that time, Flores told police that he was from Mexico City. He further stated that he had contacted an unknown person in San Luis, Mexico who agreed to transport Flores illegally to Los Angeles.[1] Flores was indicted for conspiracy to commit smuggling and later pled guilty to solicitation to commit smuggling. The factual basis offered at the change of plea is as follows:

> [DEFENSE COUNSEL]: Your honor, on or about February 27th of 2006 Mr. Coz Flores made arrangements to with [sic] another person in Mexico to be transported by that person to the United States and he either paid that person or had arrangements to pay that person to transport him to the United States illegally. And it is illegal because Mr. Coz Flores is not a U.S. citizen.
>
> THE JUDGE: And was there anything done to further his transportation into Maricopa County?
>
> [DEFENSE COUNSEL]: He made the arrangements to pay this person and, in fact, was transported into Maricopa County.

The trial court accepted the plea and imposed sentence according to its terms.[2]

¶ 3 Flores then timely filed a notice of petition for post-conviction relief.[3] Appointed counsel filed the petition and argued that the factual basis for Flores' guilty plea was insufficient to establish jurisdiction.[4] Counsel pointed out that the crime of solicitation is a crime separate from the crime solicited and is complete when the solicitor, acting with the requisite intent, makes the request. Because the facts established that the solicitation occurred and was completed in Mexico, counsel argued that Arizona did not have subject matter jurisdiction.

¶ 4 In response, the State argued that solicitation, a preparatory offense, is a continuing offense and that, because Flores admitted that he was transported into Maricopa County as a result of his solicitation, jurisdiction was properly exercised.[5]

¶ 5 The trial court denied relief because "the admitted criminal conduct constituted the offense of solicitation to commit human smuggling. This offense, like conspiracy, was ongoing and was committed in significant part in Maricopa County, where the defendant and co-defendants were ultimately arrested." Flores timely petitions this court for review and maintains that, because Arizona has no subject matter jurisdiction, his conviction and sentence must be vacated.[6]

## DISCUSSION

### Waiver and Standard of Review

¶ 6 A plea agreement waives all non-jurisdictional defects. *See State v. Moreno*, 134 Ariz. 199, 200, 655 P.2d 23, 24 (App.1982) (entering a plea of guilty waived all of defendant's non-jurisdictional defenses,

---

1. Regardless of his ultimate destination, Flores admitted by pleading guilty that the solicited underlying crime of human smuggling was intended to take place in Arizona, as travel within Arizona was apparently contemplated at the outset. *See infra* ¶¶ 7–8.

2. The parties stipulated that Flores would be placed on unsupervised probation and that he was not to remain in the United States illegally. Thus, we assume Flores has returned to Mexico.

3. A person who pleads guilty has the right to file a post-conviction relief proceeding, "and this proceeding shall be known as a Rule 32 of-right proceeding." Ariz. R.Crim. P. 32.1.

4. Anticipating that Flores would be deported, counsel and the court discussed Flores' desire to file a petition for post-conviction relief and noted for the record that Flores had authorized his counsel to sign the petition on his behalf.

5. The State also argued that Flores had committed conspiracy and that an overt act occurred in Maricopa County, thus establishing jurisdiction. Flores replied and noted that he had pled guilty to solicitation, not conspiracy. The State makes the same argument in its response to the petition for review. Because Flores was not convicted of conspiracy, we need not address this argument.

6. Although this court granted the State's motion for extension of time to file a response to the petition for review, the State did not file one. Thereafter, this court ordered the State to file a response, and one was filed.

errors, and defects prior to the plea). The waiver of non-jurisdictional defects includes deprivations of constitutional rights. *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (guilty plea represents a break in the chain of events which has preceded it in the criminal process; when a criminal defendant, on advice of counsel, has solemnly admitted in open court that he is guilty of a charged offense, he may not thereafter raise independent claims relating to deprivation of constitutional rights that antedated plea); *see State v. Canaday,* 116 Ariz. 296, 296, 569 P.2d 238, 238 (1977). However, subject matter jurisdiction cannot be waived, even by a guilty plea, and it may be raised at any time. *State v. Marks,* 186 Ariz. 139, 141–42, 920 P.2d 19, 21–22 (App. 1996); *State v. Buckley,* 153 Ariz. 91, 93, 734 P.2d 1047, 1049 (App.1987); Ariz. R.Crim. P. 16.1(b) ("Lack of [subject matter] jurisdiction may be raised at any time."). Because subject matter jurisdiction is a question of law, our review is *de novo. State v. Sorkhabi,* 202 Ariz. 450, 452, ¶ 5, 46 P.3d 1071, 1073 (App. 2002); *In re Marriage of Crawford,* 180 Ariz. 324, 326, 884 P.2d 210, 212 (App.1994) (subject matter jurisdiction is a question of law and review is *de novo* ).

**The Criminal Conduct**

■ ¶ 7 Flores pled guilty to solicitation to commit human smuggling in violation of Arizona Revised Statutes ("A.R.S.") sections 13–1002(A) (2001) [7] and 13–2319(A) (Supp.2007). Solicitation is a crime separate from the crime solicited, and, unlike conspiracy, the crime of solicitation is complete when the solicitor, acting with the requisite intent, makes the request. It requires no agreement or action by the person solicited. A.R.S. § 13–1002(A); *State v. Ysea,* 191 Ariz. 372, 376, ¶ 12, 956 P.2d 499, 503 (1998), *superseded by statute on other grounds,* A.R.S. § 13–703(F)(2) (2001), *as recognized in State v. Martinez,* 196 Ariz. 451, 462, ¶ 44, 999 P.2d 795, 806 (2000); *see also State v. Johnson,* 131 Ariz. 299, 302 n. 1, 640 P.2d 861, 864 n. 1 (1982) (quoting Wayne R. LaFave & Austin W. Scott, Jr., *Handbook on Criminal Law,* at 420 (1972)).

■ ¶ 8 Human smuggling is defined as intentionally smuggling human beings for profit or commercial purpose, knowing that the person or persons smuggled are not lawfully in Arizona.[8] It is undisputed by the parties that while in Mexico Flores solicited another person to smuggle him into the United States, which would include travel within Arizona. Thus, Flores committed the crime of solicitation while in Mexico.[9] None of Flores' conduct constituting any element of the offense of solicitation occurred in Arizona.

**Jurisdiction**

¶ 9 Because Flores committed the offense outside Arizona, we must determine whether the state can exercise subject matter jurisdiction over the crime. Arizona Revised Statute section 13–108(A)(1) (2001) reads in pertinent part as follows:

A. This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which such person is legally accountable if:

1. Conduct constituting any element of the offense *or a result of such conduct* occurs within this state.

---

7. Arizona Revised Statutes section 13–1002(A) states in relevant part that "[a] person ... commits solicitation if, with the intent to promote or facilitate the commission of a felony or misdemeanor, such person ... solicits another person to engage in specific conduct which would constitute the felony or misdemeanor or which would establish the other's complicity in its commission."

8. Arizona Revised Statute section 13–2319(A) states in relevant part: "It is unlawful for a person to intentionally engage in the smuggling of human beings for profit or commercial purpose." Human smuggling is defined as "the transportation or procurement of transportation by a person or an entity that knows or has reason to know that the person or persons transported or to be transported are not United States citizens, permanent resident aliens or persons otherwise lawfully in this state." A.R.S. § 13–2319(D)(2).

9. We are not persuaded by the State's attempt to establish jurisdiction by arguing that solicitation is a continuing offense. Although the trial court adopted the State's argument, in Arizona, solicitation, unlike attempt or conspiracy, is not a continuing offense. *See supra* ¶ 8 and note 7.

(Emphasis added). Before deciding whether Arizona has jurisdiction pursuant to this statute, we must first examine whether Arizona's jurisdiction is subject to constitutional limitations, notably Article I, Section 10, and the Supremacy Clause in Article VI, Clause 2, of the United States Constitution. As noted in *State v. Miller*, 157 Ariz. 129, 755 P.2d 434 (App.1988), the parameters of § 13–108(A)(1) are thoughtfully discussed in the Arizona Criminal Code Commission Commentary (1975):

> The primary constitutional question for jurisdictional statutes involves the power of a state to legislate other than on a strict territorial basis. The following excerpt from the Michigan Revised Criminal Code (proposed), commentary to § 140 *summarizes the law:*
>
>> Unless the state constitution contains a provision limiting the power of the legislature to enact legislation with extraterritorial application, the Tenth Amendment to the United States Constitution and United States Supreme Court cases like [*Skiriotes v. Florida*, 313 U.S. 69, 61 S.Ct. 924, 85 L.Ed. 1193 (1941) ], and [*Strassheim v. Daily*, 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911) ], appear clearly to permit a state to exercise any *basis of legislative jurisdiction recognized in international law* unless (1) the actual application of state legislation conflicts with the paramount power of the federal government to regulate and conduct foreign relations, (2) the legislation covers an area that the Congress has preempted under one of the powers delegated to it, or (3) there is an impermissible conflict with the legislative policies of the other state or states in which the defendant's actual conduct took place.
>
> *Id.* at 20 (emphasis added). Thus, the Code Commission recognized that the principles of international law circumscribe the state's criminal jurisdiction.

*Miller*, 157 Ariz. at 131, 755 P.2d at 436. In *Miller*, and later in *State v. Willoughby*, 181 Ariz. 530, 892 P.2d 1319 (1995), A.R.S. § 13–108 (2001) was interpreted to permit jurisdiction to the full extent of both federal and international law.

> Because the text of § 13–108 may fairly be construed to give Arizona jurisdiction "over crimes having any 'contact' with this state," *see* 1 Rudolf J. Gerber, Criminal Law Of Arizona 108–1 (2d ed.1993), criminal jurisdiction should reach the extent permitted under federal and international law. There being no textual limit on the reach of this statute conferring extra-territorial power, we conclude that the statute includes, on its face, offenses consummated in foreign countries as well as in other states. . . .

*Willoughby*, 181 Ariz. at 542, 892 P.2d at 1331. Thus, we must examine whether there are any constitutional or other limitations to the state's exercise of jurisdiction over Flores' offense.

**Federalism and Preemption**

¶ 10 The Tenth Amendment to the United States Constitution provides that all "powers not delegated to the United States by the Constitution" are reserved to the states. Accordingly, the states have "vast residual powers. Those powers, unless constrained or displaced by the existence of federal authority or by proper federal enactments, are often exercised in concurrence with those of the National Government." *United States v. Locke*, 529 U.S. 89, 109, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000). The states under our federal system have the principal responsibility for defining and prosecuting crimes. *Abbate v. United States*, 359 U.S. 187, 195, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Screws v. United States*, 325 U.S. 91, 109, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); *see Jerome v. United States*, 318 U.S. 101, 104–05, 63 S.Ct. 483, 87 L.Ed. 640 (1943). However, a state cannot exercise jurisdiction where Congress has "occupied the field." *See, e.g., Hines v. Davidowitz*, 312 U.S. 52, 73–74, 61 S.Ct. 399, 85 L.Ed. 581 (1941) (state's alien registration law invalid because preempted by Federal Alien Registration Act). Thus, states have the power to prosecute crimes based on acts which might also violate federal law, *Abbate*, 359 U.S. at 195, 79 S.Ct. 666, unless preempted by the Su-

premacy Clause in Article VI, Clause 2, of the United States Constitution.

¶ 11 For example, in *Skiriotes*, the Supreme Court upheld Florida's exercise of jurisdiction over the extraterritorial acts of one of its residents for violating Florida's laws regulating the taking of commercial sea sponges. 313 U.S. at 69–71, 61 S.Ct. 924. In determining that Florida's exercise of jurisdiction was proper, the Court examined whether any conflict with federal law existed. *Id.* at 74–75, 61 S.Ct. 924. Although Congress had enacted related legislation, the Court found no direct conflict, and, recognizing Florida's interest in the proper maintenance of its sponge fisheries, the Court found that the state properly exercised its police powers.

> If the United States may control the conduct of its citizens upon the high seas, we see no reason why the State of Florida may not likewise govern the conduct of its citizens upon the high seas with respect to matters in which the State has a legitimate interest and where there is no conflict with acts of Congress.

*Id.* at 77, 61 S.Ct. 924.

██ ¶ 12 Admittedly, the power to regulate immigration is exclusively a federal power. *DeCanas v. Bica,* 424 U.S. 351, 354, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). "But the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised." *Id.* at 355, 96 S.Ct. 933. In *DeCanas,* the Supreme Court outlined three ways in which state statutes related to immigration may be preempted: 1) if the state statute actually regulates immigration, *id.* at 354–55, 96 S.Ct. 933; 2) if it was the "clear and manifest purpose of Congress" to preclude even "harmonious state regulation touching on aliens in general," *id.* at 356–58, 96 S.Ct. 933; and 3) if the state law "stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress," *id.* at 363, 96 S.Ct. 933 (quoting *Hines,* 312 U.S. at 67, 61 S.Ct. 399).

██ ¶ 13 Arizona's human smuggling statute is not preempted under the first *De-Canas* test because it does not regulate immigration. Immigration regulations determine "who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." *Id.* at 355, 96 S.Ct. 933. The mere fact that aliens "are the subject of a state statute does not render it regulation of immigration." *Id.* Arizona's human smuggling statute does not regulate immigration, because it does not regulate "who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." *See id.* The statute simply prohibits the knowing transportation of illegal aliens for profit or commercial purpose, requiring as an element of the offense that the persons transported be illegal aliens. The statute does not thereby determine the legality of a person's presence in the United States. Thus, it does not constitute a state regulation of immigration, and it is not preempted on this ground. *See id.*

¶ 14 Next, Arizona's human smuggling act is not preempted by a "clear and manifest" purpose of Congress to prevent states from adopting even harmonious regulations prohibiting the smuggling of illegal aliens. In *DeCanas,* the Supreme Court found no "specific indication in either the wording or the legislative history of the INA [Immigration and Naturalization Act] that Congress intended to preclude even harmonious state regulation touching on aliens in general. . . ." *Id.* at 358, 96 S.Ct. 933. There is no indication in the INA or its history that Congress intended to preclude harmonious state regulation touching on the smuggling of illegal aliens in particular.

██ ¶ 15 Finally, Arizona's human smuggling law is not preempted because it neither conflicts with federal law nor " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' in enacting the INA." *Id.* at 363, 96 S.Ct. 933 (quoting *Hines,* 312 U.S. at 67, 61 S.Ct. 399). Rather, we find that Arizona's human smuggling law furthers the legitimate state interest of attempting to curb "the culture of lawlessness" that has arisen around

this activity by a classic exercise of its police power. Moreover, to a large extent, Arizona's objectives mirror federal objectives. Congress has enacted a similar provision, which provides in relevant part:

> Any person who ... knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law ... shall be punished as provided in subparagraph (B).

8 U.S.C. § 1324(a)(1)(A)(ii) (2005). The same act may offend the laws of both the state and the federal government and may be prosecuted and punished by each. *Abbate,* 359 U.S. at 194–95, 79 S.Ct. 666. Thus, Arizona may prosecute and punish a person who knowingly transports illegal aliens within its borders for profit or commercial purpose under its human smuggling law, just as the federal government may prosecute and punish a person who knowingly or recklessly transports such illegal aliens within the United States under its laws.

**International Law**

▪ ¶ 16 Having decided that Arizona's human smuggling statute is not preempted, we next look to international law to inform our decision regarding whether the exercise of subject matter jurisdiction is appropriate in this case. *Skiriotes,* 313 U.S. at 73–74, 61 S.Ct. 924; *Miller,* 157 Ariz. at 131, 755 P.2d at 436. The relevant international law is expressed in the Restatement (Third) of Foreign Relations Law § 402(1)(c), (3) (1987).[10] That section provides in part:

> Subject to § 403, a state has jurisdiction to prescribe law with respect to
>
> . . . .
>
> (1) ... (c) conduct outside its territory that has or is intended to have substantial effect within its territory;
>
> . . . .

(3) certain conduct outside its territory by persons not its nationals that is directed against the security of the state or against a limited class of other state interests.

The pertinent comment refers to subsection (1)(c) as the "effects" principle and explains:

> Jurisdiction with respect to activity outside the state, but having or intended to have substantial effect within the state's territory, is an aspect of jurisdiction based on territoriality, although it is sometimes viewed as a distinct category. The effects principle is not controversial with respect to acts such as shooting or even sending libelous publications across a boundary.... This Restatement takes the position that a state may exercise jurisdiction based on effects in the state, when the effect or intended effect is substantial and the exercise of jurisdiction is reasonable under § 403.

*Id.* cmt. d. The pertinent comment refers to subsection (3) as the "protective" principle and explains:

> Subsection (3) restates the protective principle of jurisdiction. International law recognizes the right of a state to punish a limited class of offenses committed outside its territory by persons who are not its nationals—offenses directed against the security of the state or other offenses threatening the integrity of governmental functions that are generally recognized as crimes by developed legal systems, e.g., espionage, counterfeiting of the state's seal or currency, falsification of official documents, as well as perjury before consular officials, and conspiracy to violate the immigration or customs laws. The protective principle may be seen as a special application of the effects principle, Comment d, but it has been treated as an independent basis of jurisdiction.

*Id.* cmt. f. Thus, we must consider the application of the "effects" and "protective" principles.

---

**10.** Neither the Restatements nor the Model Penal Code control the reach of specific state law. However, they indicate what authorities in the field believe as to how far a state may extend its criminal jurisdiction beyond national boundaries.

**414**

**Application of the "Effects" and "Protective" Principles**

▮ ¶ 17 Arizona's enactment of A.R.S. § 13–108(A)(1) is an expression of intent to exercise jurisdiction over a crime, wherever committed, when the "effect" or "result" of such crime occurs in Arizona.[11] That Arizona has attempted to maximize the reach of its jurisdiction can be seen by comparing our statute to the Model Penal Code, as was done in *Miller*:

[U]nder § 1.03(1)(a) of the Model Penal Code, ... [s]ection 1.03(1)(a) reads:

(1) ... [A] person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if:

(a) either the conduct is an element of the offense or the *result* that is such an *element* occurs within this State ... (Emphasis added.)

Our statute, A.R.S. § 13–108(A)(1), mirrors the *Model Penal Code* language, *see* Model Penal Code § 1.03 n. 12, except that *Arizona attempts to maximize the reach of its criminal jurisdiction by omitting the restriction that the result occurring within the state must be an element of the offense.*

*Miller*, 157 Ariz. at 133–34, 755 P.2d at 438–39 (emphasis added). Thus, under Arizona law, if Flores' conduct had a direct effect in Arizona, Arizona can assert jurisdiction.

¶ 18 The issue in *Miller* was whether the State's exercise of such jurisdiction comports with international extra-territorial principles. Two persons stole diamond rings from a store in Arizona. *Id.* at 130, 755 P.2d at 435. They traveled to Colorado where they met Miller for the first time. Miller learned about the rings and offered to help dispose of them in Nevada. *Id.* The three traveled to Las Vegas and sold a few of the rings. Miller was given two of the rings in payment. Miller was subsequently arrested in Utah and extradited to Arizona to answer an indictment for theft. He filed a motion to dismiss for lack of jurisdiction, which was granted, and the state appealed. *Id.*

¶ 19 On appeal, this court explained that international law determines "whether the state may assert jurisdiction based upon a statute that attempts to punish extra-territorial conduct." We held that:

Miller is not subject to the jurisdiction of the Arizona courts under a "result" theory because he is not an Arizona resident, all of his conduct occurred outside Arizona, and the conduct had, at most, only an insubstantial and indirect effect in Arizona. The "result"—the harm to the Arizona victim—had already occurred before Miller had any connection with the stolen property.

*Id.* at 133, 755 P.2d at 438. The court noted that unlike other cases where the criminal activity outside the state "does or is intended to do future direct harm within the state," Miller's crime did neither. *Id.* The "result," harm to the Arizona victim, had already occurred before Miller had any connection with the stolen property. The court stated that the "result" theory and the "effects" theory "[b]oth address the same concept" and, to comport with international law, the "activity outside Arizona's jurisdiction must, at a minimum, ... have a 'substantial effect' within Arizona." *Id.*

▮ ¶ 20 As for what constitutes a "substantial effect," *Strassheim* is instructive. In that case, while in Illinois, Daily engaged in a scheme to defraud the state of Michigan by selling used equipment represented to be new. *Strassheim*, 221 U.S. at 282, 31 S.Ct. 558. In finding that Michigan had jurisdiction, the court held that:

Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power.

*Id.* at 285, 31 S.Ct. 558. Contrasting *Strassheim* with Miller, it is apparent that

---

11. Whether labeled the "result" theory or the "effects" theory "[b]oth address the same con-
cept." *Miller*, 157 Ariz. at 133, 755 P.2d at 438.

the "result" or "detrimental effect" does not permit a state to exercise jurisdiction whenever it suffers an adverse consequence from conduct outside its borders. Rather, the adverse consequence must be part of the design of the actor.[12] The *Miller* court cited two such examples: *State v. Winckler*, 260 N.W.2d 356 (S.D.1977) (Indians who intentionally fired shots from Indian land at individuals within state's borders without hitting them were subject to state's jurisdiction for the crime of assault) and *Hanks v. Texas*, 13 Tex.Ct.App. 289 (1882) (defendant who while in Louisiana forged certificate of land transfer for land in Texas, though never in Texas, subject to Texas jurisdiction for offense). 157 Ariz. at 134, 755 P.2d at 439. *Contra State v. Stepansky*, 761 So.2d 1027 (Fla. 2000) (Florida properly exercised criminal jurisdiction for burglary and attempted sexual battery of tourist committed on cruise ship outside state's territory because crime potentially caused harm to Florida's tourist industry).

¶ 21 In this case, Flores' criminal activity was intended to and did direct harm within Arizona: Flores sought and obtained illegal entry into Arizona, and he subsequently was illegally transported and present within this state. His activity also resulted in the use of an accomplice, who committed the crime of human smuggling within Arizona. In similar cases, courts have concluded that jurisdiction exists, albeit by virtue of the "protective" principle, *see* Restatement § 403(3). Whether characterized as the "protective" principle or the "effects" or "results" principle, what emerges is a rule that establishes a lawful and reasonable exercise of jurisdiction in such cases.[13]

¶ 22 In *Rocha v. United States*, 288 F.2d 545 (9th Cir.1961), the defendants were convicted of various offenses including the making of a false statement with respect to a material fact in a visa application. On ap-

peal, the defendants argued that the false statement counts in the indictment should have been dismissed for lack of jurisdiction because the crime had been committed beyond the territorial limits of the court. *Id.* at 546. None of the defendants' conduct constituting an element of the offense had occurred in the United States, and the court framed the issue as whether the district court had jurisdiction "to indict and try an alien found within the court's jurisdiction for a crime committed abroad." *Id.* at 548.

¶ 23 Answering affirmatively, the court found that "the effect it produced within the boundaries of the United States, namely, the aliens' subsequent successful entrance at the border based on a document allegedly procured by fraud," constituted an "attack" on the nation's sovereignty, and jurisdiction could be properly exercised on the "protective principle." *Id.* at 549. The court stated that the acts done outside the state were intended to produce, and did produce, "a detrimental effect on the sovereignty of the United States." *Id.*

¶ 24 In *United States v. Pizzarusso*, 388 F.2d 8, 8–9 (2d Cir.1968), the court was presented with the same issue as in *Rocha*, namely, whether the district court had jurisdiction to convict an alien for making a false statement under oath in a visa application completed in Canada. After acknowledging that the conduct underlying all of the elements of the offense occurred outside the United States, the court held that the district court properly exercised jurisdiction under the "protective" principle. *Id.* at 10–11. The court said "[t]he utterance by an alien of a 'false statement with respect to a material fact' in a visa application constitutes an affront to the very sovereignty of the United States. These false statements must be said to have a deleterious influence on valid governmental interests." *Id.* at 9–10; *see also*

---

12. *See* Wayne R. LaFave et al., *Criminal Procedure*, § 16.4(c), at 838 & n. 100 (3d ed.2007) (citing *Miller*).

13. For a thorough discussion on the emergence of the various principles of extraterritorial jurisdiction, see *United States v. Rodriguez*, 182 F.Supp. 479 (S.D.Cal.1960), *rev'd in part on other grounds, sub nom. Rocha v. United States*, 288

F.2d 545 (9th Cir.1961), and *Hagespeth v. Superior Court*, 150 Cal.Rptr.3d 385 (2007). For an explanation and discussion of the difference between the "protective" principle and the "effects" principle and the extent of the application of these principles in different reported decisions, see Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law*, § 4.3(c), at 207 (2d ed.2003).

**416**

*United States v. Khalje,* 658 F.2d 90, 92 (2d Cir.1981) (court rejected defendant's argument that, under the principle of objective territoriality, the adverse effects within the United States needed to support jurisdiction were lacking because he falsely completed visa application outside United States; court upheld jurisdiction under the "protective" principle of international law, which "requires only a potentially adverse effect on security or governmental functions [in United States]").

¶ 25 Like the *Rocha* court, our finding of jurisdiction relies on Flores' illegal presence and transportation within Arizona as the intended result of his crime of solicitation to commit human smuggling. While this could be said to be a blending of the "effects" and "protective" principles, we find the distinction to be without significance in this case. There is no question that the *result* of Flores' crime of solicitation was his illegal entry into and unlawful presence and transportation within Arizona. His crime had a substantial effect in Arizona *and* was clearly directed against the security of the State and had a "potentially adverse effect" upon the security or governmental functions of Arizona.

## CONCLUSION

 ¶ 26 Arizona properly exercised jurisdiction in this case on the basis of A.R.S. § 13–108(A)(1), which provides for jurisdiction of an offense when the "result of such conduct occurs within this state" because Flores' conduct had a sufficiently significant result in Arizona. Thus, although we reject its reasoning,[14] the trial court did not abuse its discretion when it denied the petition for post-conviction relief. Accordingly, we grant review, but deny relief.

CONCURRING: DIANE M. JOHNSEN and PATRICIA A. OROZCO, Judges.

---

**14.** The fact that trial judge comes to the proper conclusion for wrong reason is irrelevant; the appellate court is obliged to affirm the trial court's ruling if the result was legally correct for any reason. *See State v. Perez,* 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984).