IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JASON WAYNE LAY,
*Petitioner,*

*v.*

THE HONORABLE ROGER A. NELSON,
Judge of the SUPERIOR COURT OF
THE STATE OF ARIZONA, in and for
the County of YUMA,
*Respondent Judge,*

STATE OF ARIZONA,
*Real Party in Interest.*

No. 1 CA-SA 18-0114
FILED 1-24-2019

Petition for Special Action from the Superior Court in Yuma County
No.  S1400CR201701136
The Honorable Roger A. Nelson, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Torok Law Office, PLLC, Yuma
By Gregory T. Torok
*Counsel for Petitioner*

Yuma County Attorney's Office, Yuma
By Andrew Orozco
*Counsel for Real Party in Interest*

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Amicus Curiae Arizona Attorney General*

Arizona Attorneys for Criminal Justice, Phoenix
By Mikel Steinfeld
*Counsel for Amicus Curiae Arizona Attorneys for Criminal Justice*

---

## OPINION

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Paul J. McMurdie and Judge David D. Weinzweig joined.

---

**J O H N S E N**, Judge:

**¶1**        A Yuma County justice court convicted Jason Wayne Lay of two misdemeanors.  After the superior court affirmed his convictions, Lay petitioned for special action relief, arguing the State had not offered evidence to prove the justice court had subject-matter jurisdiction over the charges.  We accept jurisdiction of his petition but deny relief.  We agree with Lay that Arizona Revised Statutes ("A.R.S.") § 22-301 (2019) establishes the subject-matter jurisdiction of an Arizona justice court but conclude the evidence at his trial was sufficient to satisfy that statute.[1]

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        Lay was charged with harassment under A.R.S. § 13-2921(A)(1) (2019) and threatening or intimidating under A.R.S. § 13-1202(A)(1) (2019).  The harassment charge was based on text messages Lay sent a woman with whom he had been in a relationship; the threatening or intimidating charge was based on evidence that Lay threatened to kill the woman's current significant other.

**¶3**        At the close of the State's case, Lay moved for judgment of acquittal under Arizona Rule of Criminal Procedure 20, arguing the State had failed to offer evidence that he committed the crimes within the

---

[1]        Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

2

precinct as required by A.R.S. § 22-301. The justice court denied the motion. It then convicted Lay and sentenced him to 60 days in jail.

**¶4**        Lay appealed to the superior court, which affirmed his convictions. After the superior court denied Lay's motion to reconsider, he filed this petition for special action.

## JURISDICTION

**¶5**        We exercise our discretion to accept jurisdiction of this special action under Article 6, Section 9, of the Arizona Constitution, A.R.S. § 12-120.21(A)(4) (2019) and Arizona Rule of Procedure for Special Actions 1(a). Lay has no remedy by appeal, *see* A.R.S. § 22-375 (2019), and this case presents a question of statutory interpretation, a question of law, which is of statewide importance, *see* Ariz. R.P. Spec. Act. 1(a); *State ex rel. Montgomery v. Brain*, 244 Ariz. 525, 527, ¶¶ 6-7 (App. 2018).

## DISCUSSION

### A.        A.R.S. § 22-301 Establishes the Subject-Matter Jurisdiction of a Justice Court.

**¶6**        Section 22-301, titled "Jurisdiction of criminal actions," states in relevant part:

A.  The justice courts shall have jurisdiction of the following offenses committed within their respective precincts:

1.  Misdemeanors and . . . .

2.  Felonies, but only for the purpose of commencing action and conducting proceedings through preliminary examinations . . . .

\*        \*        \*

C.  For the purposes of subsection A . . . of this section, an offense is committed within the precinct of a justice court if conduct constituting any element of the offense or a result of such conduct occurs either:

1.  Within the precinct.

2.  Within [certain county parks].

¶7            Lay was convicted in the justice court for Precinct One in Yuma.  He argues that court lacked subject-matter jurisdiction absent evidence that the offenses were committed "within the precinct" under § 22-301(C).

¶8            We determine subject-matter jurisdiction *de novo*.  *See State v. Flores*, 218 Ariz. 407, 410, ¶ 6 (App. 2008).  In interpreting a statute, we first look to the measure's words, giving them their ordinary meaning unless the legislature has provided a definition.  *See State v. Pledger*, 236 Ariz. 469, 471, ¶ 8 (App. 2015).  Additionally, when possible, "[w]e . . . construe statutes to give effect to an entire statutory scheme." *Backus v. State*, 220 Ariz. 101, 104, ¶ 10 (2009).

¶9            Without question, § 22-301 establishes the subject-matter jurisdiction of a justice court: "The justice courts shall have jurisdiction of the following offenses committed within their respective precincts."  A.R.S. § 22-301(A).  In subparts (A)(1) and (2), the statute sets out the matters (misdemeanors and felony preliminary proceedings) over which a justice court "shall have jurisdiction" when an offense is "committed within [the] respective precinct[]" of the court.  And subpart (C) defines what it means to be "committed within" a precinct.  As relevant here, "an offense is committed within the precinct of a justice court if conduct constituting any element of the offense or a result of such conduct occurs . . . within the precinct."

¶10            By mandating that a justice court "shall have jurisdiction" of specific offenses when those offenses are "committed within" the precinct, the statute circumscribes the power of a justice court to exercise its jurisdiction in criminal matters.  *See Bruce v. State*, 126 Ariz. 271, 272 (1980) (in *dictum*, characterizing § 22-301 as establishing the jurisdiction of justice court); *State v. Shearer*, 27 Ariz. 311, 314-15 (1925) (provision in 1913 territorial code referring to "offenses . . . within their respective precincts" determined justice-court jurisdiction); *City Court of City of Phoenix v. State ex rel. Baumert*, 115 Ariz. 351, 354 (App. 1977) (§ 22-301 "is a special statute, referring specifically to the jurisdiction of justice courts").

¶11            Although case authority interpreting § 22-301 is scant, the legislature used similar language in A.R.S. § 13-108 (2019) to describe the jurisdiction of the Arizona court system to try criminal offenses.  That statute provides:

A. This state has jurisdiction over an offense that a person commits by his own conduct or the conduct of another for which such person is legally accountable if:

1. Conduct constituting any element of the offense or a result of such conduct occurs within this state.

¶12 The cases uniformly hold that § 13-108(A)(1) defines the subject-matter jurisdiction of the Arizona judicial system to try a criminal offense. *See, e.g.*, *State v. Willoughby*, 181 Ariz. 530, 536-40 (1995) (premeditation in Arizona of homicide committed in Mexico established subject-matter jurisdiction in Arizona because premeditation is element of first-degree murder); *State v. Yegan*, 223 Ariz. 213, 215-16, ¶¶ 6-10 (App. 2009) (§ 13-108 establishes subject-matter jurisdiction of superior court over a criminal offense); *Flores*, 218 Ariz. at 410, ¶ 9 (same); *State v. Jackson*, 208 Ariz. 56, 62, ¶ 21 (App. 2004) ("territorial jurisdiction issue addressed in *Willoughby*" implicated subject-matter jurisdiction of the court).[2] Consistent with our interpretation of § 22-301, these cases hold that, as relevant here, the Arizona court system has subject-matter jurisdiction to try criminal cases only when "[c]onduct constituting any element of the offense or a result of such conduct occurs within this state." A.R.S. § 13-108(A)(1).[3] We have no reason to conclude that the language describing the "jurisdiction"

---

[2]  Under Article 6, section 14(4) of the Arizona Constitution, "the superior court" has original jurisdiction of "[c]riminal cases amounting to felony, and cases of misdemeanor not otherwise provided for by law." Although A.R.S. § 22-301 defines the subject-matter jurisdiction of a particular justice court precinct, the law of subject-matter jurisdiction treats all of Arizona's superior courts as a single entity. That is because "[t]he superior courts . . . shall constitute a single court, composed of all the duly elected or appointed judges in each of the counties of the state." Ariz. Const. art. 6, § 13; *see State v. Flemming*, 184 Ariz. 110, 114 (1995) (in general, "there is only one superior court in the state of Arizona"); *Marvin Johnson, P.C. v. Myers*, 184 Ariz. 98, 100 (1995) ("The single trial court of general jurisdiction is the superior court."). Once Arizona has acquired subject-matter jurisdiction over a felony offense pursuant to § 13-108, venue provisions determine where the offense will be tried. *See* A.R.S. § 13-109 (2019); *Masengill v. Superior Court*, 3 Ariz. App. 588, 591 (1966).

[3]  Section 13-108 has other provisions that apply, *inter alia*, to attempt, solicitation or conspiracy offenses, or when "[t]he offense is a violation of a statute of this state that prohibits conduct outside the state." A.R.S. § 13-108(A).

of the justice court in § 22-301 does not likewise define that court's subject-matter jurisdiction. *See Bruce*, 126 Ariz. at 272; *Shearer*, 27 Ariz. at 314-15.

¶13        In an *amicus* brief submitted at this court's invitation, the Arizona Attorney General asserts that § 22-301(A) establishes the subject-matter jurisdiction of a justice court only insofar as the statute identifies categories of matters (misdemeanor prosecutions and felony preliminary proceedings) that a justice court may hear. The Attorney General argues that subpart (C) of the statute, defining when "an offense is committed within the precinct of a justice court," does not concern subject-matter jurisdiction but instead establishes the "territorial jurisdiction" of a justice court.

¶14        The Attorney General argues § 22-301 does two distinct things: (1) It establishes what offenses fall within the subject-matter jurisdiction of the justice court, and (2) separately, it establishes in which precincts those offenses may be tried. But the statute is not written that way. Subpart (A), which the Attorney General concedes defines the court's subject-matter jurisdiction, states that "justice courts shall have jurisdiction of the following offenses *committed within their respective precincts*." (Emphasis added). Subpart (C), which states what it means to be "committed within the precinct," therefore is not distinct from subpart (A)'s grant of subject-matter jurisdiction but instead is a critical component of that grant. Read together, as relevant here, the statute provides that a justice court has jurisdiction over misdemeanors and felony preliminary proceedings only when the "offense[] [is] committed within [its] respective precinct[]," meaning when "conduct constituting any element of the offense or a result of such conduct occurs . . . [w]ithin the precinct." A.R.S. § 22-301(A), (C)(1).

¶15        The Attorney General relies on *Womack v. State*, 7 Ariz. App. 455 (1968), in which the defendant was charged by complaint filed in justice court, then bound over to the superior court. *Id.* There, the State filed an information, which it later amended when the defendant agreed to plead guilty to burglary. *Id.* at 456. On appeal, the defendant argued for the first time that the justice court in which the complaint had been filed lacked subject-matter jurisdiction under § 22-301 because the offense was committed outside the precinct. 7 Ariz. App. at 455-56. In a two-page opinion, this court affirmed the conviction, holding without explanation that the defendant "waived defects in the preliminary proceedings" when he pled guilty. *Id.* at 456. *See generally State v. White*, 102 Ariz. 18, 20 (1967) (Plea in superior court waived any error in preliminary matters: "Jurisdiction to try all felonies is conferred on the Superior Court . . . . If the

proper preliminary proceedings, i.e., filing of a complaint with a magistrate . . . were not carried out then the defendant should have moved to quash the information.").

**¶16**      The Attorney General argues that *Womack*, which did not mention jurisdiction, would not have applied waiver if the defendant's assertion of a defect in the justice court had implicated subject-matter jurisdiction.  We do not draw that conclusion from the court's scant discussion of waiver in that case.  The Attorney General's argument fails to acknowledge that a felony prosecution need not begin in justice court but may be undertaken by the filing of a complaint directly in superior court, where a defendant may enforce his right to a preliminary hearing.  *See* Ariz. R. Crim. P. 2.2(b) (complaint may be filed in superior court); 2.4, 3.1(a)(3).  There is no suggestion in *Womack* that the superior court in which the information was filed (and which accepted the defendant's guilty plea) lacked subject-matter jurisdiction over the offense.

**¶17**      Finally, the Attorney General argues that § 22-301 does not limit the subject-matter jurisdiction of the justice court because A.R.S. §§ 22-302 (2019) and -303 (2019) allow transfer of criminal offenses from one justice court precinct to another for trial.  It is true that, under certain circumstances, § 22-302 allows a case to be commenced in another precinct:

> If the justice of the peace of the precinct in which the crime is alleged to have been committed is absent therefrom, or for any reason is unable to act, the prosecution may be commenced in any precinct within the county designated by the justice of the peace or in the absence of the justice of the peace in any precinct designated by the presiding judge of the superior court.

A.R.S. § 22-302.  And under § 22-303, once a case is properly filed in a justice court, "venue may be changed as provided by law" upon a showing of prejudice "in the precinct where the action is pending," for the convenience of the witnesses or for "other good and sufficient cause."

**¶18**      The Attorney General argues that these provisions must mean that the subject-matter jurisdiction of a justice court is not limited under § 22-301 to offenses committed within the precinct.  To be sure, because subject-matter jurisdiction "refers to a court's statutory or constitutional power to hear and determine a particular type of case," it can neither be created by consent nor waived.  *State v. Maldonado*, 223 Ariz. 309, 311, ¶ 14 (2010); *see Jasper v. Batt*, 76 Ariz. 328, 332 (1953) ("[P]arties cannot by

stipulation or otherwise create jurisdiction and thereby confer upon the court a power not given by law."). Nevertheless, §§ 22-302 and -303 do not undermine the significance of the language of § 22-301(A) that limits the subject-matter jurisdiction of a justice court to "offenses committed within [its] respective precinct."

¶19 The validity and construction of the two venue provisions are not before us. We note, however, that § 22-302 could be read as a separate grant of subject-matter jurisdiction when a justice of the peace who is empowered to hear a matter under § 22-301 is "absent" or "unable to act." *See* Ariz. Const. art. 6, § 32(B)-(C) (jurisdiction of justice courts "shall be as provided by law"). In *State v. Melvin*, 140 Ariz. 402 (1984), for example, our supreme court held that, notwithstanding § 22-301, the legislature had the power under the Arizona Constitution to allow justice courts to decide motions to controvert search warrants in felony investigations. 140 Ariz. at 404-05; *see* A.R.S. § 13-3922 (2019) ("magistrate" may rule on motions to controvert warrant). Further, § 22-303 might be construed to allow transfer of a criminal offense from one precinct with subject-matter jurisdiction under § 22-301 to another precinct with subject-matter jurisdiction under § 22-301. Nothing in the two statutes, however, requires or allows us to disregard the plain language in § 22-301(A) that limits justice courts' jurisdiction in criminal matters to "offenses committed within their respective precincts." *See Bruce*, 126 Ariz. at 272; *Shearer*, 27 Ariz. at 314-15; *see also Willoughby*, 181 Ariz. at 536-40; *Yegan*, 223 Ariz. at 215-16, ¶¶ 6-10; *Flores*, 218 Ariz. at 410, ¶ 9.

**B.    A "Result" of the Offenses Occurred in the Justice Court's Precinct.**

¶20 To determine whether the justice court had subject-matter jurisdiction to try Lay on the two misdemeanor charges, we turn to whether "conduct constituting any element of the offense[s] or a result of such conduct occur[ed]" within Precinct One of Yuma County. *See* A.R.S. § 22-301(C). Here, as in all criminal prosecutions, the State had the burden of proving jurisdictional facts beyond a reasonable doubt. *See Willoughby*, 181 Ariz. at 538.

¶21 The State charged Lay with harassment under § 13-2921(A)(1), which provides that:

> A person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person:

1.   Anonymously or otherwise contacts, communicates or causes a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses.

**¶22**         The female victim testified that after she asked Lay to stop contacting her, someone she believed to be Lay sent her dozens of text messages that upset her.  Lay argues, and we agree, that, notwithstanding the victim's testimony, there was no evidence that "conduct causing any element of the offense" occurred within Precinct One.  Although the female victim did not work within the precinct, the court heard evidence that she lived with the male victim within the precinct.  That being said, the State offered no evidence of the location from which Lay sent the harassing text messages, nor did the court hear evidence of the location of the female victim when she received them.

**¶23**         The same was true of the evidence offered to prove Lay threatened or intimidated the male victim.  Under § 13-1202(A)(1), "[a] person commits threatening or intimidating if the person threatens or intimidates by word or conduct . . . [t]o cause physical injury to another person or serious damage to the property of another."  The female victim testified Lay called her on her cell phone while she was at work and told her he would kill the male victim.  The male victim testified he was present and overheard the threat when it was made.  As noted, the victims were not within Precinct One when they heard Lay's telephone threat, and the State offered no evidence of where Lay was when he made the call.

**¶24**         Without evidence that "conduct constituting any element" of either offense occurred in the precinct, jurisdiction turned on whether "a result of such conduct" occurred in the precinct.  *See* A.R.S. § 22-301(C).  In interpreting the same language in § 13-108, we have held that the "result" of criminal conduct occurs within a jurisdiction when the crime has and is intended to have a "substantial" or "direct" effect within the jurisdiction.  *See Flores*, 218 Ariz. at 414, ¶¶ 17, 20; *Miller*, 157 Ariz. at 130-34.

**¶25**         In *Flores*, we held Arizona had subject-matter jurisdiction over the prosecution of a man charged with solicitation to commit human smuggling because the purpose and the result of the crime (which was committed in Mexico) was the defendant's own transport into Arizona.  218 Ariz. at 416, ¶ 25.  We cautioned in that case, however, that jurisdiction is not created wherever a "result" or "detrimental effect" occurs; instead, "the adverse consequence must be part of the design of the actor."  218 Ariz. at 415, ¶ 20.  In *Miller*, the defendant became acquainted with a man and a

woman in Colorado who had stolen 11 diamond rings from a Flagstaff store. 157 Ariz. at 130. The defendant agreed to help the pair dispose of the rings and they gave him two of them in return. *Id.* After the defendant was arrested, extradited to Arizona and charged with theft, he moved to dismiss the charge for lack of jurisdiction. *Id.* We affirmed the superior court's order granting the motion. *Id.* Construing § 13-108, we reasoned that the defendant's acts "had, at most, only an insubstantial and indirect effect in Arizona" because the harm to the victim – the deprivation of the rings – "had already occurred before" the defendant became involved. *Id.* at 133.

¶26 Most recently, we addressed criminal subject-matter jurisdiction in *Yegan*, where the defendant was a California man who was convicted of luring a minor for sexual exploitation after he developed an online relationship with someone he thought was a 14-year-old Phoenix girl. 223 Ariz. at 214-15, ¶¶ 1-4. We held the Arizona court had subject-matter jurisdiction over the prosecution; even though the defendant's crimes "were technically completed while he was still in California, the intended results and consequences of his Internet communications were to participate in prohibited sexual activities in Arizona with a minor." *Id.* at 217, ¶ 13.

¶27 Applying those principles here, we conclude the justice court had subject-matter jurisdiction under § 22-301 to try both charges because the results of the two crimes occurred at the victims' residence within the precinct.

¶28 Under § 13-2921(E), harassment occurs when the defendant's "conduct . . . seriously alarms, annoys or harasses the person." In multiple texts to the female victim, Lay told her he would kill her current partner and threatened to circulate nude photos of her and to go to her work or home and destroy her belongings. The State offered evidence Lay not only knew where the female victim was living, but that the purpose of his texts was, at least in part, to coerce her to move out of the home she shared with her partner and return to Lay. This evidence plainly showed Lay intended to and did alarm or annoy the victim at her home, which was located within the precinct. *See Yegan*, 223 Ariz. at 217, ¶ 13 ("intended results and consequences" of criminal acts were to cause harm within the jurisdiction).

¶29 As for Lay's other conviction, after they heard the threat, the victims called police, who told them to go home and call again from there. The crime of threatening or intimidating does not require proof of the mental state of the intended victim. *See In re Ryan A.*, 202 Ariz. 19, 23, ¶¶ 13-14 (App. 2002). Nevertheless, a threat made in violation of § 13-1202

naturally may cause the victim fear or apprehension of physical harm or damage to property to be inflicted at some future time. The male victim heard Lay's threat, took it seriously, and immediately drove home at the direction of law enforcement. The justice court reasonably could have inferred his apprehension did not disappear before he reached home, where he met with police to describe the alarming incident in greater detail.

¶30 Lay and *amicus* Arizona Attorneys for Criminal Justice argue the court's subject-matter jurisdiction over the two offenses should not extend to any precinct into which a victim might travel while he or she feels annoyed or alarmed by a harassing text or a threatening call. Notwithstanding their contention that a victim cannot create jurisdiction by moving from one precinct to another, here, the two victims' retreat to their home was an entirely logical and expected result of Lay's crimes. Given that the victims naturally returned to their home in Precinct One after receiving the texts and hearing the threat, we need not determine the outer boundaries of a justice court's jurisdiction under § 22-301.

¶31 Accordingly, we conclude Lay's criminal offenses caused intended results and "substantial effects" within the justice court's precinct. Just as in *Yegan* and *Flores*, where the defendants committed crimes intending to cause effects in Arizona, Lay's criminal acts were designed to cause fear, anxiety and other emotional upset in the victims. Given the nature of the harassing texts and the death threat, the victims felt those harms most particularly in their home, which was located within the precinct in which the charges were tried.

## CONCLUSION

¶32 For the above reasons, we accept jurisdiction of the petition for special action but deny relief because the justice court had subject-matter jurisdiction over the charged offenses.



AMY M. WOOD • Clerk of the Court
FILED: AA