NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

RICARDO ORTEGA, *Petitioner/Appellant*,

*v.*

HARLEY YURIANA MALAGON ROBLES, *Respondent/Appellee*.

No. 1 CA-CV 24-0364 FC

FILED 10-09-2025

Appeal from the Yuma County Superior Court
No. S1400DO202000756
The Honorable Eliza B. Johnson, Commissioner

**AFFIRMED**

COUNSEL

S. Alan Cook, P.C., Phoenix
By S. Alan Cook
*Counsel for Petitioner/Appellant*

Schneider & Onofry, P.C., Phoenix
By Jon D. Schneider and Dee R. Giles
*Counsel for Respondent/Appellee*

_____

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the opinion of the Court, in which Vice Chief Judge David D. Weinzweig and Judge Cynthia J. Bailey joined.

_____

**P E R K I N S**, Judge:

¶1 Ricardo Ortega ("Father") appeals the superior court's order denying his motion to alter or amend an order directing him to cross the border between the United States and Mexico to exchange his daughter ("Child") with Harley Yuriana Malagon Robles ("Mother") for parenting time. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Child was born to Father and Mother, an unmarried couple, in Yuma in 2019. When Child was ten months old, Father petitioned to establish paternity, legal decision-making, parenting time, and child support. In May 2022, the superior court entered an order establishing Father's paternity, awarding joint legal decision-making, setting a parenting-time schedule, and directing Father to pay child support to Mother.

¶3 Mother was arrested for shoplifting in April 2023. While criminal charges were pending in Yuma County Justice Court, Mother was transferred into Immigration and Customs Enforcement custody. Father petitioned for sole legal decision-making and parenting time, fearing Mother would kidnap Child and flee to Mexico if she were released from ICE custody. The superior court issued a temporary, *ex parte* order granting Father's petition.

¶4 Mother confirmed in her response to Father's petition that she had been deported to Mexico. Based on that information, the superior court issued a temporary order denying Mother parenting time but allowing daily phone and video contact. After litigation and an evidentiary hearing on Father's petition, the superior court issued a final order awarding Father primary parenting time and designating Father as Child's primary residential parent. But the order also awarded Mother parenting time "to be exercised at her home in . . . Mexico." The final order's parenting plan

directed the parties to exchange Child at the San Luis port of entry or have Father transport Child directly to and from Mother's home in Mexico.

**¶5** At the first scheduled exchange, Father demanded that Mother pick Child up at a park on the Arizona side of the border. Mother moved the court for clarification of its final order. The court clarified that Father must "meet Mother at the port of entry or travel further into Mexico to Mother's home for the exchange of [Child]. It is implied within these facts and statements that Father will exchange [Child] on the Mexico side of the port of entry."

**¶6** Father moved to alter or amend the parenting-time order under Arizona Rule of Family Law Procedure 83. Father, as a citizen of Mexico and a legal resident of the United States, can legally travel between countries. He argued however that traveling to Mexico was an onerous burden and asked the court to authorize a third party to pick Child up at the Yuma Police Department. The court summarily denied Father's Rule 83 motion.

**¶7** Father timely appealed, but then requested a stay so he could move for relief from the judgment under Rule 85. We granted the stay, and Father filed the motion, arguing the parenting-time order was unconstitutional because it required him and Child to exit the United States. The court denied the motion. Father timely filed an amended notice of appeal. We have jurisdiction. A.R.S. § 12-2101(A)(1)–(2).

## DISCUSSION

**¶8** In his opening brief, Father argues the superior court erred in denying his Rule 83 motion because the final order directing him to travel to Mexico to exchange Child with Mother is unconstitutional. He asserts that neither the federal government nor a state court has authority to expel or deport him (a legal permanent resident of the United States) or Child (a United States citizen) to a "third-world country" where they lack constitutional protections.

### I. Preemption

**¶9** We must first decide whether federal authority over immigration preempted the part of the parenting-time order requiring Father and Child to travel to Mexico. Although Father never explicitly argued preemption, we must address it because objections to a court's subject-matter jurisdiction cannot be waived. *See Bruce v. State*, 126 Ariz. 271, 272 (1980); *see also Gilchrist v. Jim Slemons Imps., Inc.*, 803 F.2d 1488, 1497

(9th Cir. 1986) ("[A] preemption argument that affects the choice of forum rather than the choice of law is not waivable; thus, it can be raised for the first time on appeal.").

**¶10**       We ordered supplemental briefing on whether federal immigration law preempted the order, noting one potentially relevant statute. *See* 8 U.S.C. § 1185(a)(1). Section 1185(a)(1) provides that unless the President orders otherwise, "it shall be unlawful . . . for any alien to depart from or enter or attempt to depart from or enter the United States except under such reasonable rules, regulations, and orders, and subject to such limitations and exceptions as the President may prescribe."

**¶11**       Whether a court has subject-matter jurisdiction is a question of law that we review *de novo. State v. Flores*, 218 Ariz. 407, 410, ¶ 6 (App. 2008). The Tenth Amendment reserves to the states all powers not delegated to the federal government, but the Supremacy Clause provides that federal law preempts incompatible state law. *See Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015). The federal government has plenary authority over immigration, and thus state laws that clearly conflict with federal immigration law must yield. *In re Marriage of Quijada and Dominguez ("Quijada")*, 257 Ariz. 432, 437, ¶ 20 (2024). In weighing these conflicts, "we presume that state law prevails unless we find a manifest intent to adopt federal law." *Id.* at ¶ 18. "This presumption against preemption is particularly strong in fields which the States have traditionally occupied," such as domestic relations. *Id.* at ¶ 19 (cleaned up); *Haaland v. Brackeen*, 599 U.S. 255, 276 (2023) ("[R]esponsibility for regulating marriage and child custody remains primarily with the States.").

**¶12**       Federal law preempts state law when (1) a statute contains an express preemption provision, (2) Congress has occupied the field exclusively, or (3) state law conflicts with federal law. *Arizona v. United States*, 567 U.S. 387, 399 (2012). To start, federal law does not expressly preempt the parenting-time order. Father has not identified, nor are we aware of any federal provision that expressly preempts the states' authority to issue parenting-time orders.

**¶13**       The order is also not preempted on the ground that Congress occupied the entire field. Father argues state courts lack jurisdiction over "the entire field of law that relates in any way to forcing aliens or American citizens to involuntarily leave the territorial confines of the [United States] for any reason." A state law is preempted when "Congress legislates so comprehensively in a particular field that it leaves no room for supplementary state legislation." *Kansas v. Garcia*, 589 U.S. 191, 208 (2020).

The "[p]ower to regulate immigration is [] exclusively a federal power," but not "every state enactment . . . deal[ing] with aliens is a regulation of immigration." *DeCanas v. Bica*, 424 U.S. 351, 354 (1976), *superseded by statute on other grounds as stated in Garcia*, 589 U.S. at 195. Immigration regulations determine "who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." *Id.* at 355.

¶14          Father is a legal resident, making him an "alien" for purposes of federal immigration law. *See* 8 U.S.C. § 1101(a)(3). Even though the order requires an alien to cross the border, it is not an immigration regulation because it does not "determine the legality of [Father's] presence in the United States." *Flores*, 218 Ariz. at 412, ¶ 13. The order merely requires Father to cross the border, which he is independently permitted to do by federal law. Thus, the order does not regulate conduct in a field that Congress has exclusively occupied. *See id.*

¶15          Finally, the order does not conflict with federal law. A conflict exists when it is impossible to comply with both federal and state law or when a state law is an "obstacle to the accomplishment and execution of the full purposes" of a federal law. *Arizona*, 567 U.S. at 399. Father argues Section 1185 gives the President sole authority to determine how and when aliens and citizens enter or leave the United States, *see* 8 U.S.C. § 1185(a)(1) (aliens), (b) (citizens), and therefore it precludes states from deciding when they "may be ordered to leave the United States," like the order did with Father. This interpretation is not unreasonable. But it is also reasonable to read Section 1185 as merely requiring aliens and citizens to follow the President's rules, regulations, and orders to be able to cross the border. And thus Section 1185 does not preclude states from ordering people to cross the border if the President's rules, regulations, and orders permit them to do so.

¶16          Because domestic relations is traditionally a state function, we will not read Section 1185 to supersede the parenting-time order "unless that was the clear and manifest purpose of Congress." *Quijada*, 257 Ariz. at 438, ¶ 25 (cleaned up). Section 1185 contains no such purpose. Father has not identified, nor are we aware of, any federal immigration objectives that would be hindered by state courts ordering a parent to temporarily cross the border, when federal immigration law allows him to cross freely. And it is not impossible for Father to comply with the parenting-time order and federal immigration law because federal law permits him to cross the border. For these reasons, we conclude that federal law does not preempt the order.

## II.   Constitutional claims

**¶17**         Father argues it was unconstitutional for the court to order him and Child to travel to Mexico, but he cites no legal authority to support that claim. Instead, Father speculates that the order was an unconstitutional form of deportation that forced him and Child to enter Mexico, where they lack constitutional protections. But "deportation . . . is not synonymous with mere departure from the country[, it] denotes an involvement by the federal government and means, in effect, an official expulsion." *Lopez v. Franklin*, 427 F. Supp. 345, 347 (E.D. Mich. 1977) (cleaned up); *see also E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020) ("Removal . . . means sending an alien back permanently to his country of origin."). Father has not argued, and we do not know of any basis on which the parenting-time order violates the Constitution.

**¶18**         Father argues, in his reply brief, that the superior court's jurisdiction is defined by statute, and no statute authorizes the court to order a citizen to travel to another country. Arizona Revised Statutes Section 25-403.02 provides that if the parents cannot agree on a parenting plan, the superior "court shall adopt a parenting plan" that includes "[a] practical schedule of parenting time" and "[a] procedure for the exchanges of the child, including *location and responsibility for transportation*." A.R.S. § 25-403.02(A)–(C)(4) (emphasis added). Thus, the court has the authority to direct the location of parenting time. Father has not provided, nor are we aware of, anything confining that authority to within the borders of the United States.

### B.   Best interests

**¶19**         Father argues the court abused its discretion because the parenting-time schedule was impracticable and not in Child's best interests. He asserts that it endangers Child by making her travel to Mexico, and that it causes Child to be late or absent from school.

**¶20**         We review parenting-time orders for an abuse of discretion. *Gish v. Greyson*, 253 Ariz. 437, 444, ¶ 31 (2022). We also review for an abuse of discretion denials of Rule 83 motions to amend and Rule 85 motions for relief. *Wisniewski v. Dolecka*, 251 Ariz. 240, 241, ¶ 5 (App. 2021); *Clark v. Kreamer*, 243 Ariz. 272, 275, ¶ 10 (App. 2017). An abuse of discretion occurs if the court makes an error of law in reaching a discretionary conclusion, *DeLuna v. Petitto*, 247 Ariz. 420, 423, ¶ 9 (App. 2019), fails to consider evidence in reaching a conclusion, or makes a finding of fact that lacks substantial evidence in the record. *Flying Diamond Airpark, LLC v. Meienberg*,

215 Ariz. 44, 50, ¶ 27 (App. 2007). We defer to a court's factual findings unless they are clearly erroneous. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018).

**¶21**         The court "has discretion to determine parenting time based on all the evidence before it." *See Gonzalez-Gunter v. Gunter*, 249 Ariz. 489, 492, ¶ 11 (App. 2020). But it must consider the best interests of the child in making its parenting-time determinations, including the factors listed in Section 25-403(A). A.R.S. § 25-403(B). Parenting plans must also include a "practical schedule of parenting time for the child" that "maximizes [each parent's] parenting time." A.R.S. § 25-403.02(B), (C)(3).

**¶22**         The court considered and made findings on all the required best-interests factors. *See* A.R.S. § 25-403(A). The court weighed Father's concerns about Child's safety in traveling to Mexico and found the danger did not outweigh the benefit of in-person visits with Mother. That is a discretionary finding, to which we defer without reweighing the evidence. *Gutierrez v. Fox*, 242 Ariz. 259, 272, ¶ 49 (App. 2017).

**¶23**         The court also did not abuse its discretion by denying Father's motion to amend the parenting plan. Father requested that the exchange occur on Sunday evening instead of Monday morning, and that one of Mother's relatives drive Child across the border instead of Father. Reasonable evidence supports the court's finding that it was in Child's best interests for Mother to have meaningful in-person parenting time. The court thus had the discretion to require that parenting time to extend to Monday morning. And given Child's young age, reasonable evidence supports the court's finding that Father personally driving Child across the border "was the least intrusive option for the Court considering the circumstances."

**¶24**         We recognize that requiring Father to drive Child across the border effectively saddles Father with the repercussions for Mother's misconduct that got her deported. But that outcome does not render the parenting-time order erroneous. In adopting a parenting plan, equitable considerations of the parents are always secondary to the child's best interests. *See Smith v. Smith*, 253 Ariz. 43, 47, ¶ 18 (App. 2022) (we do not require courts to order maximal or near-equal parenting time, only that the parenting plan is in the child's best interests); *Dunbar v. Dunbar*, 102 Ariz. 352, 354 (1967) ("[Parents'] happiness and their desires will never be allowed to interfere with the child's true welfare."). And we will not second-guess the superior court's weighing of those considerations. *See*

*Lehn v. Al-Thanayyan*, 246 Ariz. 277, 284, ¶ 20 (App. 2019). The court did not abuse its discretion.

## CONCLUSION

**¶25** We affirm. Both parties request attorney fees on appeal. After considering the factors under Section 25-324, we decline to award either party their attorney fees or costs on appeal.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR